UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ x
DANIELA SCIVETTI,                                  :
                                                   :
                                    Plaintiff,     :        Case No. 1:24-cv-03868-DEH
                                                   :
                   v.                              :
                                                   :
COMPASS, INC., SLATER CONSULTING CORP.             :
TROVE PARTNERS, INC., JULIAN BERKELEY,             :
IAN SLATER, MICHAEL KOENEKE,                        :
and BRETT WALSDORF,                                :
                                                   :
                                    Defendants.    :
------------------------------------------------------------------ x

## MEMORANDUM OF LAW IN SUPPORT OF COMPASS, INC. AND JULIAN BERKELEY'S <u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

Jamie Haar
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
599 Lexington Avenue – 17th Floor
New York, New York  10022
(212) 492-2500
jamie.haar@ogletree.com

*Attorneys for Defendants*
*Compass, Inc. and Julian Berkeley*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.   PRELIMINARY STATEMENT ................................................................................................1

II.  BACKGROUND ...................................................................................................................2

    A.  The Parties .................................................................................................................2

    B.  Plaintiff Joins the Slater Team ..................................................................................2

        1.  Plaintiff Allegedly Complains About Sexual Harassment and Unpaid
            Commissions to the Slater Team, But Not Compass ......................................4

    C.  Plaintiff's Termination from the Slater Team and Application for a New Position ...........4

II.  ARGUMENT .......................................................................................................................5

    A.  Motion to Dismiss Standard Under 12(b)(6) ............................................................5

    B.  The Complaint Against Compass Must Be Dismissed Because The Compass
       Defendants Were Not Plaintiff's Employer ..............................................................6

        1.  The Compass Defendants Were Not Plaintiff's Employer Under the Anti-
            Discrimination Laws ......................................................................................6

            a.  The Single Employer and Joint Employer Doctrines ............................6

            b.  Plaintiff Fails to Demonstrate that the Slater Team and Compass Were a
               Single Employer or that Compass Was Her Joint Employer ..................................9

        2.  The Compass Defendants Were Not Plaintiff's Employer Under the NYLL .............10

    C.  Plaintiff Fails to Plead Plausible Sexual Harassment Claims ...........................................11

        1.  Plaintiff Fails to State A Claim For Hostile Work Environment Under Title
            VII, NYSHRL, and the NYCHRL ..............................................................11

            a.  Standard under Title VII ....................................................................11

            b.  Standards under the NYSHRL and NYCHRL .........................................12

         2.  Plaintiff Cannot Establish Liability As to the Compass Defendants ...........................14

    D.  Plaintiff's Disparate Treatment Claims Fail As a Matter of Law ......................................15

    E.  Plaintiff's Retaliation Claims Fail As a Matter of Law ...................................................16

F.   Plaintiff's Aider and Abettor Claim Fails .................................................................17

G.   Plaintiff's ERISA Claim Fails As a Matter of Law ...........................................18

H.   Plaintiff's Breach of Contract Claim Must be Dismissed...................................19

I.   Plaintiff's NYLL Claims Must Be Dismissed ..................................................20

    1.   Section 191.................................................................................................20

    2.   Section 215.................................................................................................22

    3.   Sections 195(1) and (3).............................................................................23

J.   Plaintiff's Claims Under the Freelance Isn't Free Act Must Be Dismissed ....24

    1.   Failure to provide written contract Under Section 20-928 ..........................24

    2.   Retaliation Under Section 20-930................................................................25

III. CONCLUSION...........................................................................................................25

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Anderson v. Greene*,
   774 F. App'x 694 (2d Cir. 2019) ............................................................19

*Areu v. Fox News Network, LLC*,
   No. 20-CV-8678, 2021 WL 4124226 (S.D.N.Y. Sept. 9, 2021)...................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................5

*Barbosa v. Continuum Health Partners, Inc.*,
   716 F. Supp. 2d 210 (S.D.N.Y. 2010).........................................................8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).....................................................................................8

*Benson v. Ruttura & Sons Constr. Co.*,
   No. 20-CV-0853(JS)(ST), 2021 WL 1238712 (E.D.N.Y. Mar. 31, 2021) ..............17

*Bierer v. Glaze, Inc.*,
   No. 05-CV-2459 (CPS), 2006 WL 2882569 (E.D.N.Y. Oct. 6, 2006)...................21

*Brown v. Daikin Am. Inc.*,
   756 F.3d 219 (2d Cir. 2014).........................................................................8

*Cadet v. Alliance Nursing Staffing of N.Y., Inc.*,
   632 F. Supp. 3d 202 (S.D.N.Y. 2022)........................................................19

*Calise v. N.Y. State Dep't of Motor Vehicles*,
   No. 17 CV 791 (VB), 2018 WL 4350247, at *5 (S.D.N.Y. Sept. 12, 2018) ..........16

*Carmody v. N.Y.Univ.*,
   No. 21 CIV. 8186 (LGS), 2023 WL 5803432 (S.D.N.Y. Sept. 7, 2023)...............18

*Carris v. First Student, Inc.*,
   15-3350, 682 F. App'x 30 (2d Cir. 2017)...................................................15

*Collison v. WANDRD, LLC*,
   No. 24-CV-2221 (LJL), 2024 WL 3106326 (S.D.N.Y. June 20, 2024) ................11

*Colodney v. Continuum Health Partners, Inc.*,
   33 Employee Benefits Cas 1751 (S.D.N.Y. Apr. 15, 2004) ...................18

*Community for Creative Non–Violence v. Reid*,
    490 U.S. 730 (1989)................................................................................................6

*Cook v. Arrowsmith Shelburne, Inc.*,
    69 F.3d 1235 (2d Cir. 1995)...................................................................................7

*Copantitla v. Fiskardo Estiatorio, Inc.*,
    788 F. Supp. 2d 253 (S.D.N.Y. 2011)....................................................................22

*Dapson v. City of Rochester, N.Y.*,
    No. 17-cv-6704, 2019 WL 591692 (W.D.N.Y. Feb. 12, 2019)..............................15

*Dellefave v. Access Temporaries, Inc.*,
    No. 99 CIV. 6098 RWS, 2001 WL 25745 (S.D.N.Y. Jan. 10, 2001)......................14

*Desouza v. Office of Children & Family Servs.*,
    No. 18-cv-2463, 2019 WL 2477796 (E.D.N.Y. June 12, 2019)............................15

*Drehmer v. N.Y. State, State Univ. of N.Y.*,
    No. 20-CV-6143 (CJS), 2020 WL 6205690 (W.D.N.Y. Oct. 22, 2020) ..................5

*Duch v. Jakubek*,
    588 F.3d 757 (2d Cir. 2009)..................................................................................14

*Duff v. Pristine Servs., Inc.*,
    No. 19-CV-10423 (RA), 2021 WL 663981 (S.D.N.Y. Feb. 19, 2021) .....................8

*Galante v. Watermark Servs. IV, LLC*,
    No. 23-CV-6227-FPG, 2024 WL 989704 (W.D.N.Y. Mar. 7, 2024)......................20

*Gill v. Acacia Network*,
    13 Civ. 9088, 2015 WL 1254774 (S.D.N.Y. Mar. 18, 2015) ................................19

*Giugliano v. FS2 Cap. Partners, LLC*,
    No. 14-CV-7240 ADS GRB, 2015 WL 5124796 (E.D.N.Y. Sept. 1, 2015) ...........20

*Griffin v. Sirva Inc.*,
    835 F.3d 283 (2d Cir. 2016)....................................................................................6

*Gulino v. N.Y. State Educ. Dep't*,
    460 F.3d 361 (2d Cir. 2006)....................................................................................6

*Harris v. Forklift Sys., Inc.*,
    510 U.S. 17 (1993)................................................................................................12

*Henderson v. Physician Affiliate Grp. of N.Y. P.C.*,
    No. 18-cv-3430, 2019 WL 3778504 (S.D.N.Y. Aug. 12, 2019)............................16

*Herman v. RSR Sec. Servs. Ltd.*,
  172 F.3d 132 (2d Cir. 1999)...................................................................................10

*Iqbal. McHenry v. Fox News Network, LLC*,
  510 F. Supp. 3d 51 (S.D.N.Y. 2020)..................................................................8, 17

*Irizarry v. Catsimatidis*,
  722 F.3d 99 (2d Cir. 2013)......................................................................................10

*Kellett v. Glaxo Enter., Inc.*,
  No. 91 CIV. 6237 (LMM), 1994 WL 669975 (S.D.N.Y. Nov. 30, 1994)................7

*Kurtanidze v. Mizuho Bank, Ltd.*,
  No. 23 CIV. 8716 (PAE), 2024 WL 1117180 (S.D.N.Y. Mar. 13, 2024) ..............19

*Lettieri v. Anti-Defamation League Found.*,
  No. 22 CIV. 9889 (PAE), 2023 WL 5152447 (S.D.N.Y. Aug. 10, 2023)..............16

*Lima v. Napoli*,
  No. 19CV1699JMAST, 2023 WL 2731689 (E.D.N.Y. Mar. 31, 2023), *appeal
  withdrawn*, No. 23-744, 2023 WL 7286592 (2d Cir. Aug. 7, 2023) .......................22

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)................................................................................................23

*Maiurano v. Cantor Fitzgerald Sec.*,
  No. 19 CIV. 10042 (KPF), 2021 WL 76410 (S.D.N.Y. Jan. 8, 2021)............12, 13

*Musiello v. CBS Corp.*,
  518 F. Supp. 3d 782 (S.D.N.Y. 2021)..................................................................6, 7

*Neor v. Acacia Network, Inc.*,
  No. 22-cv-4814, 2023 WL 1797267 (S.D.N.Y. Feb. 7, 2023) ..............................23

*Popat v. Levy*,
  253 F. Supp. 3d 527 (W.D.N.Y. 2017) ..............................................................6, 7, 8

*Raeman v. Cty. of Ontario*,
  No. 12-CV-6009 CJS, 2013 WL 956758 (W.D.N.Y. Mar. 12, 2013) ...................16

*Ramirez v. Urion Constr. LLC*,
  674 F. Supp. 3d 42 (S.D.N.Y. 2023).....................................................................24

*Raspardo v. Carlone*,
  770 F.3d 97 (2d Cir. 2014).....................................................................................12

*Reed v. Fortive Corp.*,
   No. 21-CV-6312 CJS, 2023 WL 4457908 (W.D.N.Y. July 11, 2023)*, aff'd*,
   No. 23-1075, 2024 WL 1756110 (2d Cir. Apr. 24, 2024) ....................................................14

*Schade v. Coty, Inc.*,
   No. 00 CIV 1568 JGK, 2001 WL 709258 (S.D.N.Y. June 25, 2001) .......................................7

*Scott v. Rochester Gas & Elec.*,
   333 F. Supp. 3d 273 (W.D.N.Y. 2018) ...................................................................................11

*Snyder v. Advest, Inc.*,
   No. 06 CIV.1426 RMB FM, 2008 WL 4571502 (S.D.N.Y. June 8, 2008) .............................7

*Spokeo Inc. v. Robins*,
   578 U.S. 330 (2016) ...............................................................................................................23

*Suarez v. Big Apple Car, Inc.*,
   No. 15-CIV-5330 (AMD) (RLM), 2017 WL 11507197 (E.D.N.Y. Nov. 1,
   2017) ......................................................................................................................................20

*Summa v. Hofstra Univ.*,
   708 F.3d 115 (2d Cir. 2013)...................................................................................................14

*Tal v. Computech Int'l, Inc.*,
   No. 21CV5773JMASIL, 2022 WL 18135290 (E.D.N.Y. Dec. 1, 2022)
   .........................................................................................................................19, 20, 21, 22

*Wu v. Good Samaritan Hosp. Med. Ctr.*,
   815 F. App'x 575 (2d Cir. 2020) ...........................................................................................23

*Yost v. Everyrealm, Inc.*,
   657 F. Supp. 3d 563 (S.D.N.Y. 2023).............................................................................12, 13

**State Cases**

*Ahmed v. Morgans Hotel Grp. Mgmt., LLC*,
   54 Misc.3d 1220(A), 55 N.Y.S.3d 691 (Sup. Ct. N.Y. Cnty. Feb. 27, 2017),
   *aff'd*, 160 A.D.3d 555, 74 N.Y.S.3d 546 (1st Dep't 2018).....................................................24

*Grant v. Glob. Aircraft Dispatch, Inc.*,
   223 A.D.3d 712, 204 N.Y.S.3d 117 (2d Dep't 2024)............................................................20

*Pachter v. Bernard Hodes Grp., Inc.*,
   10 N.Y.3d 609, 861 N.Y.S.3d 246 ........................................................................................20

*Palmer v. Cook*,
   65 Misc. 3d 374, 108 N.Y.S.3d 297 (Sup. Ct. Queens Cnty. 2019) ......................................13

*Sandles v. Magna Legal Servs., LLC,*
    62 Misc.3d 761, 90 N.Y.S.3d 843 (N.Y.C. Civ. Ct., 2018)........................................25

*Tan v. Breathing.AI LLC,*
    79 Misc. 3d 1211(A), 190 N.Y.S.3d 271 (Sup. Ct. N.Y. Cnty. 2023)....................25

*Vega v. CM & Associates Construction Management,*
    175 A.D.3d 1144, 107 N.Y.S.3d 286 (1st Dep't 2019) ........................................20

**Federal Statutes**

29 U.S.C. § 1132(c)(1)...................................................................................................18

29 U.S.C. § 1132(c)(3)...................................................................................................18

29 U.S.C §§ 1161(a), 1163 ...........................................................................................18

Title VII ............................................................................................................... *passim*

**State Statutes**

N.Y.C. Administrative Code § 20-928 .....................................................................24, 25

NYCHRL .............................................................................................................. *passim*

NYLL ................................................................................................................... *passim*

NYLL 195(6) ...................................................................................................................19

NYLL Article 19 .............................................................................................................24

NYLL Article 6 ...............................................................................................................24

NYLL § 191(1)(c).....................................................................................................21, 22

NYLL § 195(1) ...............................................................................................................23

NYLL § 195(3) ...............................................................................................................23

NYLL § 215 ....................................................................................................................22

NYSHRL ............................................................................................................... *passim*

**Rules**

Federal Rules of Civil Procedure Rule 12(b)(6) .......................................................1, 5

## I.    <u>PRELIMINARY STATEMENT</u>

Defendants Compass Management Holdings, LLC, incorrectly named as Compass, Inc., ("Compass") and Compass employee Julian Berkeley ("Berkeley") (collectively, the "Compass Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Complaint brought by Plaintiff Daniela Scivetti ("Plaintiff") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For all of the reasons set forth below, each of Plaintiff's claims should be dismissed as a matter of law.

As an initial matter and fatal flaw requiring dismissal, neither Compass nor Berkeley were ever Plaintiff's employer for purposes of liability under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL"), the New York City Human Rights Law ("NYCHRL"), the New York Labor Law ("NYLL"), and the Employee Retirement Income Security Act of 1974 ("ERISA"). Plaintiff fails to plead a direct employment relationship with Compass and does not attempt to demonstrate an employment relationship under either the single employer or joint employer doctrines. Even if this Court deems Compass and Berkeley employers for purposes of this motion, or otherwise holds that Plaintiff was an independent contractor of Compass under the NYSHRL or the NYCHRL, Plaintiff's claims against Compass and Berkeley nonetheless still fail as a matter of law because Plaintiff has simply failed to plead the necessary facts to support any of her claims. Plaintiff's boilerplate legal conclusions and formulaic recitation of the elements of her claims are not a substitute for the facts required to state a claim for relief.

For these reasons, the Compass Defendants respectfully request that the Complaint be dismissed in its entirety and with prejudice.

## II.    <u>BACKGROUND</u>[1]

### A.    **The Parties**

Compass is a real estate brokerage. (Compl., ¶ 22.) Compass contracts with independent contractor real estate agents. (*Id.*, ¶¶ 62, 75, 80, 85.) While some real estate agents work alone, other real estate agents establish their own teams whereby they form their own corporations and operate as separate businesses and entities.

One such entity is Slater Consulting Corp. (hereinafter, the "Slater Team") which was founded by independent contractor real estate agent, Ian Slater ("Slater") in or around 2018. (*Id.*, ¶¶ 91, 191.) During the relevant time period, Slater was the Team Leader of the Slater Team, while Michael Koeneke ("Koeneke") and Brett Walsdorf ("Walsdorf") were members of the team and performed work as independent contractor real estate agents (*Id.*, ¶¶ 91, 96, 99.) Berkeley is a Sales Manager and Compass employee and serves as a liaison to numerous teams in New York, including the Slater Team. (*Id.*, ¶¶ 66, 70-71.)

### B.    **Plaintiff Joins the Slater Team**

The Complaint alleges an employment relationship involving Plaintiff, the Slater Team, Trove, and Compass, where Plaintiff makes bald and contradictory assertions that she was employed both as an employee and retained as an independent contractor in an Administrative Staff position, and given the title of Director of Operations from December 2020 to August 25, 2022. (*Id.*, ¶¶ 60-64, 194.) Plaintiff further alleges in a conclusory manner that Berkeley was an officer, director, shareholder, employee, and independent contractor of Compass, the Slater Team, and Trove, and also Plaintiff's employer and supervisor. (*Id.*, ¶¶ 65-72, 88-90, 100-102, 112, 116, 120, 124.) Indeed, Plaintiff alleges each individual defendant served in each of these legal

---

[1] The information in this section is derived from Plaintiff's Complaint, which is attached as Exhibit ("Ex.") A to the Affirmation of Jamie Haar ("Haar Aff.") (hereinafter, "Compl.").

capacities. As to Slater, Koeneke, and Walsdorf's purported status as Compass employees, other than form and threadbare allegations that Compass supervised and otherwise directed the terms and conditions of "Compass Departments," the Complaint is devoid of any specific allegations regarding Compass' role, if any, in directing the terms and conditions of Slater, Koeneke, or Walsdorf's work or otherwise how Compass managed or supervised them. (*Id.*, ¶ 131.)

When Plaintiff joined the Slater Team, her annual base salary was $70,000. (*Id.*, ¶194.) She further asserts entitlement to a 1% commission on Compass' Fees for transactions processed by the Slater Team for which she did not contribute additional work, and 2% if she prepared necessary Board packages. (*Id.*, ¶ 195.) Additionally, she alleges an increase in her annual salary to $80,500 and an increased percentage of the Slater Team's Commissions as of July 25, 2022. (*Id.*, ¶ 203.)

Plaintiff's terms and conditions of employment involved collaborating with, raising concerns with, or communicating solely with members of the Slater Team, not Compass. Indeed, the sparse specific allegations reveal that: 1) The Slater Team had its own office that Plaintiff reported to; 2) Plaintiff received assignments from Slater, Koeneke, and Walsdorf; 3) Slater set and paid her base salary; 4) Plaintiff received health benefits from the Slater Team; 5) Slater executed a personal guaranty for Plaintiff's residential apartment; 6) Slater increased her job duties; 7) Slater reviewed Plaintiff's performance while Koeneke allegedly criticized it; 8) Slater granted Plaintiff a salary increase and an increased percentage of the Slater Team's Commissions; and 9) Plaintiff complained about alleged unpaid commissions and Koeneke's sexual harassment to Slater and Walsdorf. (*Id.*, ¶¶ 190, 195, 203, 209.)

Conversely, Plaintiff outlines superficial connections with Compass. Specifically that Plaintiff had the option to participate in Compass' stock option plan; was required to submit to on-boarding training from Compass and to comply with Compass' Policies and Procedures; was required to use

a Compass-branded computer for work; use a Compass-branded entry pass; use or display Compass-branded apparel; use Compass-branded transaction documents and deal packages; use a Compass branded-email address; use Compass' portal to submit expenses and to perform all tasks; and was required to hold her real estate license and attend both Compass' company-wide meetings and Slater Team internal meetings. (*Id.*, ¶¶ 195, 200.)

### 1.    Plaintiff Allegedly Complains About Sexual Harassment and Unpaid Commissions to the Slater Team, But Not Compass

Plaintiff generally claims that throughout her tenure working for the Slater Team, she repeatedly complained about or reported Koeneke's alleged sexual harassment and unpaid commissions (Compl., ¶ 210.) Specifically, Plaintiff alleges that she first complained about unpaid commissions to Walsdorf in July 2021 and specifically complained again in July 2022 (*Id.*, ¶¶ 207, 210). She then alleges that she began complaining of sexual harassment to Walsdorf in July and August 2022. (*Id.*, ¶ 210.) Nowhere in the Complaint does Plaintiff allege that she ever raised concerns to Berkeley or to anyone at Compass regarding alleged sexual harassment or unpaid commissions. Contemporaneous with her alleged complaints to Walsdorf in July and August 2022, 1) Plaintiff's duties and responsibilities increased, 2) she received a favorable performance review, and 3) she received a raise. (*Id.*, ¶ 203.)

### C.    Plaintiff's Termination from the Slater Team and Application for a New Position

Plaintiff alleges that she was subjected to retaliation in response to her complaints which culminated in her termination from the Slater Team.[2] Notably, Plaintiff mentions Berkeley for the first time in her allegations regarding her termination. While Plaintiff alleges that Berkeley was a Compass liaison for the Slater Team, she does not detail a single factual allegation regarding

---

[2] As to her alleged unpaid commissions, Plaintiff acknowledges that she was paid all owed commissions at the time of her termination. (Compl., ¶ 212.)

Berkeley other than the conclusory assertions that he somehow had advance knowledge of or permitted her termination, brought about her license drop, and impacted her job prospects. (*Id.*, ¶¶ 212-213.)

## II.    ARGUMENT

### A.    Motion to Dismiss Standard Under 12(b)(6)

A party may move to dismiss one or more causes of action on the ground that they fail to state a valid cause of action. Fed. R. Civ. P. 12(b)(6). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Drehmer v. N.Y. State, State Univ. of N.Y.*, No. 20-CV-6143 (CJS), 2020 WL 6205690, at *5 (W.D.N.Y. Oct. 22, 2020) (citing *Iqbal*, 556 U.S. at 678.) Testing the sufficiency of the complaint thus involves two steps. *Iqbal*, 556 U.S. at 678-79. First, the court eliminates allegations that "are no more than conclusions." *Id*. at 679. Neither "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements," nor "legal conclusion[s] couched as . . . factual allegation[s]," nor "naked assertions devoid of further factual enhancement" will suffice. *Id*. at 677-78.

Second, "[w]hen there are well-pleaded factual allegations, a court should . . . determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 664. A claim is only plausible when it includes sufficient facts for the court to draw a reasonable inference that defendant is liable for the alleged misconduct–*i.e.*, the mere "possibility of misconduct" is not enough. *Id.*, at 679 "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief" and the action is subject to dismissal. *Id*. at 678 (punctuation & citation omitted).

**B.    The Complaint Against Compass Must Be Dismissed Because The Compass Defendants Were Not Plaintiff's Employer**

**1.    The Compass Defendants Were Not Plaintiff's Employer Under the Anti-Discrimination Laws**

Title VII, NYSHRL, and the NYCHRL prohibit discriminatory employment practices by an "employer." Consequently, the "existence of an 'employer-employee relationship'" is a primary element of Title VII, NYSHRL, and NYCHRL claims. *Musiello v. CBS Corp.*, 518 F. Supp. 3d 782, 789 (S.D.N.Y. 2021); *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006). When analyzing direct employment relationships under Title VII, the Court considers various factors as set forth by the Supreme Court in *Community for Creative Non–Violence v. Reid*, 490 U.S. 730, 751–52 (1989). While no single factor is determinative, "the common-law element of control is the principal guidepost that should be followed" in determining whether a direct employment relationship is present. *Id.*[3]

In addition to an entity that has a direct employment relationship with the plaintiff, an entity that is not formally the plaintiff's employer may be liable under Title VII and the NYSHRL pursuant to the "single employer" or "joint employer" doctrines.

**a.    The Single Employer and Joint Employer Doctrines**

"A 'single employer' situation exists where two nominally separate entities are actually part of a single integrated enterprise." *Popat v. Levy*, 253 F. Supp. 3d 527, 537 (W.D.N.Y. 2017)*.* "[E]xamples may be parent and wholly-owned subsidiary corporations, or separate corporations under common ownership and management." *Id.* When considering whether two entities are a single employer, courts consider four factors: "(1) interrelation of operations, (2) centralized

---

[3] New York State courts generally look to four elements: "(1) the selection and engagement of the servant; (2) the payment of salary or wages; (3) the power of dismissal; and (4) the power of control of the servant's conduct." *Griffin v. Sirva Inc.*, 835 F.3d 283, 291 (2d Cir. 2016).

control of labor relations, (3) common management, and (4) common ownership or financial control." *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240 (2d Cir. 1995) (quotation omitted).

In *Snyder v. Advest, Inc.*, No. 06 CIV.1426 RMB FM, 2008 WL 4571502, at *6 (S.D.N.Y. June 8, 2008), the Court held that no single employer relationship existed where the plaintiff alleged that she was provided with copies of the corporate parent's policies, the corporate parent was listed as the plaintiff's employer on a health insurance form, and plaintiff was offered access to corporate parent's Shareplan so he could purchase corporate parent stock. The Court held that evidence that the corporate parent and subsidiary may have shared or "maintained the same benefits [*i.e.,* life insurance and stock purchase plan] does not suggest centralized control of labor relations." *Id.* at *7 (emphasis in original); *see also Kellett v. Glaxo Enter., Inc.*, No. 91 CIV. 6237 (LMM), 1994 WL 669975, at *5 (S.D.N.Y. Nov. 30, 1994).  Moreover, the overlapping of email and payroll systems do not "inherently bespeak a single-employer arrangement." *See Musiello*, 518 F. Supp. 3d at 792-93. Likewise, simply being required to attend meetings led by corporate parent, without more, does not suggest centralized control of labor relations. *See Schade v. Coty, Inc.*, No. 00 CIV 1568 JGK, 2001 WL 709258, at *9 (S.D.N.Y. June 25, 2001).

The second is the "joint employer doctrine," which, by contrast, does not involve a single integrated enterprise. *Popat*, 253 F. Supp. 3d at 538. Rather, joint employers are "separate legal entities, but . . . they handle certain aspects of their employer-employee relationship jointly." *Id.* Where this doctrine is operative, an employee, formally employed by one entity, who has been assigned to work in circumstances that justify the conclusion that the employee is at the same time constructively employed by another entity, may impose liability for violations of employment law on the constructive employer, on the theory that this other entity is the employee's

joint employer. *Id.* "Here, courts look at 'commonality of hiring, firing, discipline, pay, insurance, records, and supervision' to determine whether an entity is a joint employer." *Id.* Attending trainings, including on topics such as anti-discrimination and quality control suggests only "minimal level of oversight" insufficient to show joint employer. *See Duff v. Pristine Servs., Inc.*, No. 19-CV-10423 (RA), 2021 WL 663981, at *4 (S.D.N.Y. Feb. 19, 2021).

In order to state a claim against the defendants other than her direct, formal employer on the basis of the single employer or joint-employer doctrine, "[the plaintiff] must plead enough facts so that the claim is facially plausible." *See Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014); *Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 219 (S.D.N.Y. 2010). "[C]onclusory, *ipse dixit* assertions" about the degree of control the parent exercised over the subsidiary do not satisfy the pleading standards as articulated in *Twombly* and *Iqbal*. *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 82 (S.D.N.Y. 2020). Merely reciting the four factors for the single employment or joint employment doctrine, unaccompanied by any factual allegations to support that theory will not survive a motion to dismiss. *See Popat*, 253 F. Supp. 3d at 539-40.

In *Ruiz v. New Avon LLC*, the Court dismissed the parent corporation noting that the plaintiffs' complaint made no mention at all of control over employment matters—before proceeding to refer to Avon Products and New Avon collectively as "Avon" for the remainder of the Complaint. *Ruiz*, No. 18-CV-9033 (VSB), 2019 WL 4601847, at *13-14 (S.D.N.Y. Sept. 22, 2019), *appeal withdrawn sub nom. Rivas v. New Avon LLC*, No. 19-3398, 2020 WL 1907545 (2d Cir. Jan. 22, 2020) ("[l]umping the two Defendants together under one name is nothing more than window dressing" as none of Plaintiffs' vague and conclusory allegations plausibly suggests that one entity had any involvement in the employment decisions of the other.")

   **b.**  **Plaintiff Fails to Demonstrate that the Slater Team and Compass**
      **Were a Single Employer or that Compass Was Her Joint Employer**

Here, the Complaint fails to plead facts supporting a plausible inference that the Compass

Defendants were Plaintiff's employer under either a single or joint employer theory. Indeed,

Plaintiff's reference to the Slater Team and Compass as "the Employer" or referring to the Slater

Team as a "Compass Department" throughout the Complaint is simply "window dressing." *See id*.

After eliminating the majority of the "form allegations" that amount to mere conclusory statements

or legal conclusions couched as factual allegations regarding the relationship between Compass

and the Slater Team, (Compl., ¶¶ 23-50, 60-75, 88-91, 112, 131, 135), Plaintiff is left with only a

handful of allegations as to the Compass Defendants. (*See supra*, II.B.) As discussed above, these

are the very types of allegations that courts have found to be insufficient as a matter of law. *See*

*supra*, III.B.1.a.

  Further, other than claiming in conclusory fashion that the "Individual Tortfeasors" were

Compass, Slater Team, and Trove employees and independent contractors and that they were all

Plaintiff's supervisors, there are no factual allegations as to common management, interrelation of

operations, or centralized control of labor relations. Plaintiff's terms and conditions of employment

involved collaborating with, raising concerns with, or communicating solely with Slater, Koeneke,

and Walsdorf, and other Slater Team real estate agents. (*See supra*, II.B.) While Plaintiff alleges

that Berkeley was a "Compass Liaison" for the Slater Team, she does not detail a single factual

allegation regarding Berkeley other than the conclusory assertions that he somehow had advance

knowledge of or permitted her termination, brought about her license drop, and impacted her job

prospects with a third party. (Compl., ¶¶ 212-213.) [4] Since the Compass Defendants were not Plaintiff's employer, they must be dismissed from the Complaint.

### 2.    The Compass Defendants Were Not Plaintiff's Employer Under the NYLL

For liability to attach under the NYLL, a defendant must be an employer. *See Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999). In assessing whether an employer-employee relationship exists, courts consider the following four factors: "[W]hether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Cicero v. Intellor Grp., Inc.*, 172 F.3d 132, 139 (W.D.N.Y. 2021). These factors are to be considered in the totality of circumstances. *Id.* None of these factors is dispositive, nor are they exclusive. *Id.*

To plead that an individual is an employer, it is not sufficient to allege that he "is an owner or officer of a company, or otherwise makes corporate decisions that have nothing to do with an employee's function." *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013). "To be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment." *Id.* "A person exercises operational control over employees if his or her role within the company, and the decisions it entails, directly affect the nature of conditions of the employees' employment." *Id.* at 110.

---

[4] Plaintiff also asserts that she began looking for other opportunities including with a third party called the Hudson Advisory Team. (*See* Compl., ¶ 213.)  To the extent that these fleeting allegations somehow could be construed as asserting a failure to hire claim against Compass or Berkeley, it would fail for the same reasons, namely, the absence of any allegations that Compass or Berkeley were involved in those decisions. (*Id.*) To the contrary, the Complaint alleges that the team's "director" reached out to Plaintiff about her job application. That Plaintiff alleges that the Hudson Advisory Team was a "Compass Department" does not add plausibility to any purported joint or single employer claim. (*Id.,* ¶¶ 213-215.)

For substantially the same reasons as outlined above, *supra*, III.B, Plaintiff fails to allege

that the Compass Defendants were her employer. Plaintiff's allegations are boilerplate and merely

track certain factors of the economic reality test. Plaintiff alleges "labels and conclusions" and

provides at most "a formulaic recitation of the elements of a cause of action [which] will not do."

*Collison v. WANDRD, LLC*, No. 24-CV-2221 (LJL), 2024 WL 3106326, at *6 (S.D.N.Y. June 20,

2024). Moreover, merely alleging that Berkeley was an "officer, director, and/or shareholder of

Compass," and that he had, and exercised, the power to hire, fire, and control the wages and

working conditions of Plaintiff, and supervised Plaintiff, (Compl., ¶¶ 65, 112, 131), without more,

are the type of allegations that have been found to be insufficient to show that an individual was

an "employer" under the NYLL. *See Collison*, 2024 WL 3106326, at *6. As such, Plaintiff's NYLL

claims against the Compass Defendants must be dismissed.

**C.    Plaintiff Fails to Plead Plausible Sexual Harassment Claims**

Even if Plaintiff was the Compass Defendants' employee or Plaintiff is otherwise deemed

an independent contractor under the NYSHRL or NYCHRL, she nonetheless cannot state a

plausible claim for sexual harassment, let alone as to Compass or Berkeley.

**1.    Plaintiff Fails to State A Claim For Hostile Work Environment Under Title VII, NYSHRL, and the NYCHRL[5]**

**a.    Standard under Title VII**

To survive a motion to dismiss on a hostile work environment claim under Title VII,

Plaintiff must adequately plead that: (i) "the workplace is permeated with discriminatory

intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions

---

[5] As an initial matter, the majority of Plaintiff's sexual harassment claims are time-barred under Title VII. An individual asserting claims under Title VII must file a charge with the EEOC within 300 days after the alleged unlawful employment practice occurred. *Scott v. Rochester Gas & Elec.*, 333 F. Supp. 3d 273, 278-79 (W.D.N.Y. 2018).

of the victim's employment and create an abusive working environment," and (ii) "a specific basis exists for imputing the conduct that created the hostile environment to the employer." *See Maiurano v. Cantor Fitzgerald Sec.*, No. 19 CIV. 10042 (KPF), 2021 WL 76410, at *3 (S.D.N.Y. Jan. 8, 2021). In assessing whether a work environment was hostile, courts consider the totality of circumstances, including: "[i] the frequency of the discriminatory conduct; [ii] its severity; [iii] whether it is physically threatening or humiliating, or a mere offensive utterance; and [iv] whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "This standard has both objective and subjective components: the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive. The incidents must be more than episodic; they must be sufficiently continuous and concerted." *Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014).

### b.    Standards under the NYSHRL and NYCHRL

Under the NYSHRL as amended, "harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in [a] protected category[y]." § 296(h). Petty slights or trivial inconvenience are not actionable. *Id.* "In order to prevail on a hostile work environment claim under the NYCHRL, a plaintiff must show that she was treated 'less well than other employees' on the basis of a protected characteristic." *Yost v. Everyrealm, Inc.*, 657 F. Supp. 3d 563, 580 (S.D.N.Y. 2023). In other words, to state a claim of sex-based harassment or sex discrimination, a plaintiff must allege that the harassment was tied to the fact that she was female. (*See id.*)

In *Maiurano*, the Court dismissed plaintiff's hostile work environment claim holding that while the alleged bad actor's behavior was objectively unprofessional and subjectively objectionable to plaintiff, "there is nothing in [the] pleading that suggests that the incidents were

more than episodic or were physically intrusive, threatening, or humiliating." *Id.*, 2021 WL 76410, at *4 (holding *inter alia* that speaking about sexual relations with fiancé was insufficient.)

Stray remarks or isolated comments similar or far worse than alleged here are consistently held to be insufficient to prove discrimination where they have no nexus to an adverse employment action. *Yost*, 2023 WL 2224450, at *14 (citing *Goodwine v. City of N.Y.*, No. 15-CV-2868 (JMF), 2016 WL 3017398, at *9 (S.D.N.Y. May 23, 2016) (dismissing Title VII, NYSHRL, and NYCHRL claims where supervisor referred to plaintiff "as a 'c**t' and 'bitch.'"); *Palmer v. Cook*, 65 Misc. 3d 374, 389-90, 108 N.Y.S.3d 297, 309 (Sup. Ct. Queens Cnty. 2019) (dismissing NYCHRL claims where no nexus between "whore" and "prostitute" remarks and employee's termination). In *Areu v. Fox News Network, LLC*, No. 20-CV-8678, 2021 WL 4124226 (S.D.N.Y. Sept. 9, 2021), the Court found that Tucker Carlson's action of changing in front of plaintiff and telling her "that he would be staying alone in his hotel room" was not a basis for a hostile work environment claim. Similarly, the Court held that Sean Hannity's conduct of asking plaintiff about her relationship status was not a basis for a hostile work environment claim, even though there was other conduct, such as describing her as a "beautiful woman," "auction[ing] [her] off for a date, and pressur[ing] her male guest to take her out." *Id.*, at *14.

Similarly, Plaintiff's hostile work environment claims fail for several reasons. First, the majority of Plaintiff's allegations are conclusory and do not specify the nature of what was said. For example, Plaintiff claims that Koeneke "constantly and brazenly comment[ed] on Scivetti's appearance and that of other female employees" and "consistently texted inappropriate, sexist, and misogynistic texts to the Slater Team WhatsApp group chat." (Compl., ¶ 209.) As to Walsdorf's alleged stray comments, Plaintiff alleges without specificity or detail that he "repeatedly told Scivetti . . . about the sexual exploits of a friend." (*Id.*, ¶ 210). Such allegations that lack any factual

13

detail about what, if anything, Koeneke or Walsdorf said, have been deemed insufficient to satisfy the plausibility standard. *See Reed v. Fortive Corp.*, No. 21-CV-6312 CJS, 2023 WL 4457908, at *17–18 (W.D.N.Y. July 11, 2023)*, aff'd,* No. 23-1075, 2024 WL 1756110 (2d Cir. Apr. 24, 2024).

Second, based on the above precedent, Koeneke and/or Walsdorf's alleged stray remarks are woefully deficient in establishing harassment tied to her sex. (Compl., ¶¶ 208-210.) Moreover, Koeneke's alleged comment concerning an alleged dating relationship between Plaintiff and a male client is not actionable as this comment does not give rise to an inference of discrimination based on sex, let alone, establish a basis for sexual harassment. *See, e.g.*, *Dellefave v. Access Temporaries, Inc.*, No. 99 CIV. 6098 RWS, 2001 WL 25745, at *7 (S.D.N.Y. Jan. 10, 2001) ("Even if embarrassing or even humiliating, a statement that an employee is having a consensual relationship with a co-worker cannot be construed as discrimination or harassment on the basis of sex absent some additional showing.") (citing cases). Accordingly, Plaintiff's sexual harassment claims under Title VII, the NYSHRL, and the NYCHRL must be dismissed.

### 2. Plaintiff Cannot Establish Liability As to the Compass Defendants

As Slater, Koeneke, and Walsdorf are not Compass employees, but independent contractors, (*see supra*, II.B.; *see, e.g.* III.1.), this Court can only impute liability to Compass if it finds that Compass was negligent and "failed to provide a reasonable avenue for complaint or that it knew, or in the exercise of reasonable care should have known, about the harassment yet failed to take appropriate remedial action." *Duch v. Jakubek*, 588 F.3d 757, 762 (2d Cir. 2009) (quotations omitted). Indeed, the Second Circuit has adopted the well-reasoned rules of the EEOC in imputing employer liability for harassment by non-employees according to the same standards for non-supervisory co-workers, with the qualification that we "will consider the extent of the employer's control and any other legal responsibility which the employer may have with respect to the conduct of such non-employees." *Summa v. Hofstra Univ.*, 708 F.3d 115, 124 (2d Cir. 2013)

(citing 29 C.F.R. § 1604.11(e).   Here, there are zero allegations that Berkeley or anyone at Compass subjected Plaintiff to sexual harassment, that they knew or should have known that Plaintiff was allegedly subjected to sexual harassment, did nothing to address it, or that Plaintiff raised concerns or complained to Berkeley or anyone at Compass about the alleged harassment. As Plaintiff has not plausibly alleged that Compass is liable for Slater, Koeneke, or Walsdorf's conduct, the Compass Defendants must be dismissed.

## D.     Plaintiff's Disparate Treatment Claims Fail As a Matter of Law

To the extent Plaintiff alleges a disparate treatment claim based on gender, such claim similarly fails. A disparate treatment claim requires a plaintiff to plead facts that would tend to show "that the defendant had a discriminatory intent or motive for taking a job-related action." *Desouza v. Office of Children & Family Servs.*, No. 18-cv-2463, 2019 WL 2477796, at *4 (E.D.N.Y. June 12, 2019). "To support a minimal inference of discrimination, a plaintiff may allege disparate treatment by showing the more favorable treatment of employees not in the protected group, who are similarly situated in all material respects." *Carris v. First Student, Inc.*, 15-3350, 682 F. App'x 30, 32 (2d Cir. 2017). Simply alleging that a female employee was subjected to instances of disparate treatment as compared to male counterparts is insufficient to survive a motion to dismiss when the pleading does not allege any facts suggesting that the plaintiff was treated less favorably than similarly situated-males with regard to certain terms and conditions of employment. *See Dapson v. City of Rochester, N.Y.*, No. 17-cv-6704, 2019 WL 591692, at *8-9 (W.D.N.Y. Feb. 12, 2019). Similarly, merely alleging that plaintiff was treated less favorably than her co-workers generally and without regard to sex is insufficient to state a claim. *Id.*

Plaintiff's sole allegation regarding differential treatment between herself and male employees is a general allegation that unidentified male employees were not subject to having their

licenses impaired or impacted.[6] (Compl. ¶ 212.) Yet, the Complaint is devoid of any facts about these employees or how they are similarly situated. None of Plaintiff's vague allegations support an inference of discrimination and must be dismissed. *See Henderson v. Physician Affiliate Grp. of N.Y. P.C.*, No. 18-cv-3430, 2019 WL 3778504, at *4 (S.D.N.Y. Aug. 12, 2019).

**E.    Plaintiff's Retaliation Claims Fail As a Matter of Law**

Under Title VII, a claim of retaliation consists of the following elements: "(1) [plaintiff] engaged in a protected activity; (2) the employer was aware of the protected activity; (3) the employer took adverse action; and (4) a causal connection exists between the protected activity and the adverse action, *i.e.,* that a retaliatory motive played a part in the adverse employment action." *Raeman v. Cty. of Ontario*, No. 12-CV-6009 CJS, 2013 WL 956758, at *8 (W.D.N.Y. Mar. 12, 2013); *see Lettieri v. Anti-Defamation League Found.*, No. 22 CIV. 9889 (PAE), 2023 WL 5152447, at *6 (S.D.N.Y. Aug. 10, 2023) (analyzing retaliation claim under the NYCHRL).

An adverse employment action in the retaliation context is as an action that "could well dissuade a reasonable worker from making or supporting a charge of discrimination." *See Calise v. N.Y. State Dep't of Motor Vehicles*, No. 17 CV 791 (VB), 2018 WL 4350247, at *5 (S.D.N.Y. Sept. 12, 2018). "'Trivial harms' or 'petty slights or minor annoyances' do not constitute materially adverse employment action." *Id.* at *6. Further, to adequately plead causation, the plaintiff must "allege that the retaliation was a 'but-for' cause of the employer's adverse action, i.e., that 'the adverse action would not have occurred in the absence of the retaliatory motive.'" *Id.* A plaintiff must allege that the defendant was aware of the protected activity, such that it could have caused the retaliation. *Lettieri*, 2023 WL 5152447, at *12.

---

[6] To the extent Plaintiff also alleges that she was denied other positions following her termination due to gender, for substantially the same reasons, this claim similarly fails. (Compl., ¶ 346.)

Plaintiff's Complaint is devoid of any allegations that she ever raised concerns or otherwise put Berkeley on notice that she was opposing sexual harassment. Nor does Plaintiff allege that Compass had general corporate knowledge that she had engaged in protected activity. Accordingly, on this basis alone, Plaintiff's claims as to the Compass Defendants must be dismissed. *Id.* (dismissing retaliation claim under the NYCHRL). In addition, all allegations regarding retaliation or alleged adverse actions stem from alleged conduct perpetrated by Slater, Walsdorf, or Koeneke – none of whom are employed by Compass. (Compl., ¶ 212 (i.-v.)). Other than the bald assertions that "[d]uring a meeting with Slater on or about August 25, 2022, with the advance knowledge, advise, consent, authority, permission and/or retaliation of Berkeley . . . Scivetti was suddenly terminated," there is simply nothing in the Complaint describing in any detail as to how Berkeley or Compass brought about Plaintiff's termination in supposed retaliation for complaints that neither Compass nor Berkeley were ever aware of. (*Id.*, ¶ 212.) Nor are there any specific allegations as to Berkeley's role in the partial reinstatement of Plaintiff's real estate license or any influence he had in a third party's decision not to hire her for an open assistant position. Even if Compass and Berkeley were somehow involved (which they were not), Plaintiff's own allegations belie any inference of retaliation. (*See supra*, II.B.1, II.B.C.) As such, Plaintiff cannot plausibly state a claim for retaliation as to the Compass Defendants.

## F.    Plaintiff's Aider and Abettor Claim Fails

An individual may be held liable for aiding and abetting unlawful discriminatory acts if the individual "actually participates in the conduct giving rise to a discrimination claim." *McHenry,* 510 F. Supp. 3d at 68. If the disparate treatment, sexual harassment, and retaliation claims are dismissed, the Court should similarly dismiss the aider and abettor cause of action as to Berkeley. *See Benson v. Ruttura & Sons Constr. Co.*, No. 20-CV-0853(JS)(ST), 2021 WL 1238712, at *5 (E.D.N.Y. Mar. 31, 2021). In the event any of the claims survive, which they should not, Plaintiff's

aider and abettor claim should still be dismissed as Berkeley cannot be held liable for aiding and abetting discrimination under the NYSHRL or the NYCHRL. Other than conclusory assertions, Plaintiff fails to plausibly plead that Berkeley actually participated in any of the alleged unlawful conduct. Accordingly, Plaintiff's aider and abettor claim as to Berkeley must be dismissed.[7]

## G.    Plaintiff's ERISA Claim Fails As a Matter of Law

Plaintiff admits in her Complaint that the Slater Team provided her with health insurance benefits. (Compl. ¶ 195.) Accordingly, the Compass Defendants were not under an obligation to notify Plaintiff in writing of the exact date of the cancellation of employee benefits or otherwise provide her with a COBRA notice. Accordingly, this claim must be dismissed on this basis alone. Even if the Compass Defendants provided Plaintiff with health benefits, which they did not, her ERISA claim nonetheless fails. COBRA permits an employee to continue to receive health benefits at the group rate even after the termination of employment. *See* 29 U.S.C §§ 1161(a), 1163. A plan administrator's failure to comply with COBRA's notice provisions entitles a beneficiary to statutory damages of up to $100 per day. *See* 29 U.S.C. § 1132(c)(1). However, statutory damages for a failure to give notice are not available against an employer who is not the plan administrator. 29 U.S.C. § 1132(c)(3). In order to state a claim for relief, a Plaintiff must: (1) allege the existence of a qualified healthcare plan governed by COBRA; (2) name the plan administrator as a defendant; and (3) allege that his employer is the plan administrator if no separate administrator has been designated. Failure to do so warrants dismissal of this claim. *See Colodney v. Continuum Health Partners, Inc*., 33 Employee Benefits Cas 1751 (S.D.N.Y. Apr. 15, 2004).

---

[7] While Plaintiff also alleges that Berkeley was an employer under the NYSHRL and NYCHRL, such claims fail as she does not allege that Berkeley has ownership in Compass or that he had the power to do more than carry out personnel decisions. *Carmody v. N.Y.Univ.*, No. 21 CIV. 8186 (LGS), 2023 WL 5803432, at *6 (S.D.N.Y. Sept. 7, 2023).

In the Complaint, Plaintiff fails to: (1) name the plan administrator as a defendant; or (2) allege that Compass is the plan administrator if no separate administrator has been designated. (Compl. ¶¶277-289.) Plaintiff's failure to include the plan administrator as a defendant in this action or allege that Compass acted as its own plan administrator is fatal to her claim. *See Gill v. Acacia Network*, 13 Civ. 9088, 2015 WL 1254774, at *4 (S.D.N.Y. Mar. 18, 2015).[8]

## H.    Plaintiff's Breach of Contract Claim Must be Dismissed

The elements of a breach of contract claim in New York are: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Tal v. Computech Int'l, Inc.*, No. 21CV5773JMASIL, 2022 WL 18135290, at *4 (E.D.N.Y. Dec. 1, 2022), *report & recommendation adopted*, 2023 WL 112804 (E.D.N.Y. Jan. 5, 2023). "Stating in a conclusory manner that an agreement was breached does not sustain a claim of breach of contract." *Kurtanidze v. Mizuho Bank, Ltd.*, No. 23 CIV. 8716 (PAE), 2024 WL 1117180, at *17 (S.D.N.Y. Mar. 13, 2024).  At minimum, "a complaint must plead the specific provisions of the contract that were allegedly breached and the specific actions of the defendants that constituted that breach." *Anderson v. Greene*, 774 F. App'x 694, 697 (2d Cir. 2019).

Plaintiff's breach of contract claim for alleged unpaid commissions should be dismissed because Plaintiff has not set forth sufficient allegations to render her claim plausible. Other than referring to "Scivetti's Employment Terms" and a "written and/or oral contract wherein Scivetti would provide services to Employer in exchange for commission," (Compl. ¶¶ 195, 506), Plaintiff offers no details concerning the contours of the alleged agreed upon commissions, let alone the

---

[8] For substantially the same reasons, Plaintiff's NYLL 195(6) claim fails. In addition, Plaintiff lacks standing due to her failure to allege any injuries stemming from the alleged violation of Section 195(6). Here, Plaintiff does not allege that she did not continue her health coverage; she pleads only a statutory violation of the notice requirement. That is insufficient. *Cadet v. Alliance Nursing Staffing of N.Y., Inc.*, 632 F. Supp. 3d 202, 224 (S.D.N.Y. 2022).

existence of an enforceable agreement to support a breach of contract claim. Plaintiff has neglected to identify any transactions, the timing and value of each sale, other timing provisions, including when commissions were deemed earned[9] and when commissions had been agreed to be paid (i.e. weekly, monthly, or at less frequent intervals), or any other details that would suggest a potential entitlement to any allegedly unpaid commissions, much less the sum of $20,789.17 she alleges in conclusory fashion that she is owed. (*Id.*, ¶ 205.)

New York courts have regularly held that such conclusory and detail-deficient allegations concerning an alleged entitlement to commissions are insufficient to state a claim for relief under New York law. *See, e.g., Tal*, 2022 WL 18135290, at *4; *Cicero*, 2021 WL 1720810, at *4-5; *Suarez v. Big Apple Car, Inc.*, No. 15-CIV-5330 (AMD) (RLM), 2017 WL 11507197, at *4 (E.D.N.Y. Nov. 1, 2017); *Giugliano v. FS2 Cap. Partners, LLC*, No. 14-CV-7240 ADS GRB, 2015 WL 5124796, at *11 (E.D.N.Y. Sept. 1, 2015). In the absence of any detailed allegations, Plaintiff's breach of contract claim for unpaid commissions must be dismissed.

## I.    Plaintiff's NYLL Claims Must Be Dismissed

### 1.    Section 191[10]

As an initial matter, and as outlined above, since the Compass Defendants were not Plaintiff's employer, they cannot be held liable under NYLL § 191. (*See supra*, III.B.2.) Even if

---

[9] New York law allows parties to agree to certain conditions as to when commissions are earned. *See Pachter v. Bernard Hodes Grp., Inc.*, 10 N.Y.3d 609, 617-18, 861 N.Y.S.3d 246, 251(2008) ("The commission will not be deemed 'earned' or vested until computation of the agreed-upon formula").

[10] Plaintiff does not have an express or implied private right of action for an alleged untimely payment of commissions under NYLL 191. *See Grant v. Glob. Aircraft Dispatch, Inc.*, 223 A.D.3d 712, 714-20, 204 N.Y.S.3d 117 (2d Dep't 2024) (rejecting the First Department's conclusion in *Vega v. CM & Associates Construction Management*, 175 A.D.3d 1144, 107 N.Y.S.3d 286 (1st Dep't 2019) that there is such a right of action); *Galante v. Watermark Servs. IV, LLC*, No. 23-CV-6227-FPG, 2024 WL 989704, at *6 (W.D.N.Y. Mar. 7, 2024).

this Court deems Plaintiff an employee of the Compass Defendants for purposes of this motion, her claim for the untimely payment of commissions[11] nevertheless fails.

A claim under the NYLL § 191(1)(c) hinges on whether Plaintiff is owed commissions "earned in accordance with the agreed terms of employment."[12] A claim under NYLL § 191(1)(c) "rises and falls with [a] plaintiff's claim for breach of contract," and her "failure to establish a contractual right to wages necessarily precludes a statutory claim under New York's labor law." *Tal*, 2022 WL 18135290, at *5. As set forth above, Plaintiff has not alleged the existence of an agreement entitling her to commissions. As such, her NYLL claim should be dismissed because of the absence of a contractual predicate. *See id.*

Furthermore, Plaintiff's NYLL § 191(1)(c) claim should be independently dismissed for failure to set forth sufficient allegations demonstrating a plausible claim that she is covered by the NYLL. *See, e.g.*, *Bierer v. Glaze, Inc.*, No. 05-CV-2459 (CPS), 2006 WL 2882569, at *9 (E.D.N.Y. Oct. 6, 2006). Specifically, Plaintiff has not sufficiently alleged that she is a "commission salesperson" under the NYLL. Instead, Plaintiff alleges that when she began working for the Slater Team, her title was Director of Operations and her duties and responsibilities included back-office support. (Compl., ¶¶ 194, 199, 201.) She also alleges she was a "non-exempt employee," and simply offers the legal conclusion that she was a "commission sales person." (*Id.*, ¶¶ 194, 199, 201, 438-439.) However, she also alleges that during her tenure, she engaged in high level administrative tasks. (*Id.*, ¶ 203.) Finally, Plaintiff fails to allege that her "principal duty" was sales as required. Taking the conclusory allegations that Plaintiff was a "commission salesperson," along with the allegations that she began to perform high level administrative tasks sounding in an

---

[11] In addressing Plaintiff's unpaid commissions claim, the Compass Defendants do not concede that Plaintiff's unpaid commissions are "wages" under the NYLL.
[12] *See supra*, n.9.

exempt administrative role and without any sales duties, Plaintiff fails to plausibly allege that she was covered by NYLL § 191(1)(c). *See Tal*, 2022 WL 18135290, at *5.

### 2.    Section 215

Under the NYLL, an "employer . . . or any other person" may not retaliate against an employee because "such employee has made a complaint to his or her employer . . . that the employer has engaged in conduct that the employee, reasonably and in good faith, believes violates any provision of [the NYLL]." NYLL § 215(1)(a)(i). A plaintiff must therefore prove under the NYLL that, "while employed by the defendant, [the plaintiff] made a complaint about the employer's violation of the law and, as a result, was terminated or otherwise penalized, discriminated against, or subjected to an adverse employment action." *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 302 (S.D.N.Y. 2011). As described above, the Compass Defendants were not Plaintiff's employer as required to sustain a NYLL retaliation claim. To the extent that this Court holds that the Compass Defendants were not Plaintiff's employer, she cannot prove this essential element of her NYLL retaliation claims.

Even assuming *arguendo* that the Compass Defendants were Plaintiff's employer (they were not), her retaliation claims fail on other grounds as well. Nowhere in the Complaint does Plaintiff allege that she complained about her unpaid commissions to Berkeley, let alone anyone at Compass, while she worked for the Slater Team. As Plaintiff fails to plausibly allege that she complained to the Compass Defendants (her alleged employer), her NYLL § 215 claim fails for this additional reason. *Lima v. Napoli*, No. 19CV1699JMAST, 2023 WL 2731689, at *2 (E.D.N.Y. Mar. 31, 2023), *appeal withdrawn*, No. 23-744, 2023 WL 7286592 (2d Cir. Aug. 7, 2023).

Further, Plaintiff fails to adequately plead that her termination from the Slater Team, the partial reinstatement of her real estate license, or a third party's failure to hire her was due to retaliation on the part of the Compass Defendants. First, there is no allegation that the Compass

22

Defendants knew of her complaint of unpaid commissions. This is fatal to her retaliation claims against the Compass Defendants. *Wu v. Good Samaritan Hosp. Med. Ctr.*, 815 F. App'x 575, 582 (2d Cir. 2020). Second, other than the bald assertions that "[d]uring a meeting with Slater on or about August 25, 2022, with the advance knowledge, advice, consent, authority, permission and/or retaliation of Berkeley . . . Scivetti was suddenly terminated," there is simply nothing in the Complaint describing in any detail as to how Berkeley brought about Plaintiff's termination. (Compl., ¶ 212.) Nor are there any specific allegations as to Berkeley's role in the partial reinstatement of Plaintiff's real estate license or any influence he had in a third party's decision not to hire her for an open assistant position.

### 3.    Sections 195(1) and (3)

Plaintiff fails to state a plausible claim under NYLL § 195(1) and (3) as she has failed to plead a tangible, concrete injury. Further, New York law provides a complete affirmative defense to NYLL § 195(1)(a) and (3) claims where, despite the employer having allegedly violated the statute's notice requirements, the employee received all payments due or that the earnings actually received by the employee met or exceeded the applicable minimum wage.

As to standing under Article III, Plaintiff must demonstrate a tangible, concrete injury—a threshold she categorically fails to meet. Indeed, Plaintiff has the burden to establish standing. *See Spokeo Inc. v. Robins*, 578 U.S. 330, 338-39 (2016). To do so, Plaintiff must have suffered an injury in fact, i.e., the invasion of a legally-protected interest that is both actual and imminent, not conjectural or hypothetical. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "A plaintiff cannot solely rely on the fact that the defendant committed a statutory violation because an 'injury in law' does not amount to an 'injury in fact' for purposes of Article III standing." *Neor v. Acacia Network, Inc.*, No. 22-cv-4814, 2023 WL 1797267, at *4 (S.D.N.Y. Feb. 7, 2023).

As an initial matter, since the Compass Defendants were not Plaintiff's employer, they had no obligation to provide Plaintiff with a hiring notice, wage notices, or statements. Even so, there is no allegation that Plaintiff suffered any injury because of the alleged failure to receive a hiring notice or wage statements. Her claim is nothing more than speculation and conjecture, which is why courts have routinely rejected similar allegations in concluding that they are insufficient to establish standing. *See Ramirez v. Urion Constr. LLC*, 674 F. Supp. 3d 42, 55-56 (S.D.N.Y. 2023) (collecting cases).  Accordingly, Plaintiff lacks standing.

The Court should also dismiss these claims because Plaintiff received all payments due under NYLL Article 6 (governing payment of wages) and because the earnings actually received by her met or exceeded the applicable minimum wage under NYLL Article 19. *See Ahmed v. Morgans Hotel Grp. Mgmt., LLC*, 54 Misc.3d 1220(A), at *6, 55 N.Y.S.3d 691 (table) (Sup. Ct. N.Y. Cnty. Feb. 27, 2017)  ("Labor Law § 198(1–b) and (1–d) provide that, when an individual is not provided with the requisite notice, the employer will not be liable where the employee was always paid an amount equal to or above the minimum wage throughout his employment."), *aff'd*, 160 A.D.3d 555, 74 N.Y.S.3d 546 (1st Dep't 2018).

**J.      Plaintiff's Claims Under the Freelance Isn't Free Act Must Be Dismissed**

**1.      Failure to provide written contract Under Section 20-928**

Apart from conclusorily alleging that Compass was a "hiring party" and she was a "freelance worker" pursuant to the statute, Plaintiff fails to plead that she was entitled to protection under FIFA. (Compl., ¶¶ 494-495). Notwithstanding, Plaintiff fails to state a claim under N.Y.C. Administrative Code § 20-928, which provides that "[w]henever a hiring party retains the services of a freelance worker . . . the contract shall be reduced to writing." Based on Plaintiff's allegations, at least as of December 2020, she was performing freelance work on behalf of the "Employer" without a written agreement, in violation of § 20-928. Section 20-933(a)(2) provides, however,

that "[a]ny action alleging a violation of section 20-928 shall be brought within two years after the acts alleged to have violated this chapter occurred." As Plaintiff filed this lawsuit on May 19, 2024, her claim is untimely with respect to work performed between December 2020 and May 18, 2022. *Tan v. Breathing.AI LLC*, 79 Misc. 3d 1211(A), 190 N.Y.S.3d 271 (Sup. Ct. N.Y. Cnty. 2023).

Further, Plaintiff's claim fails because she does not allege that she requested a written contract. This is fatal to her claim as the statute requires that a freelance worker "request[] a written contract before the contracted work began." N.Y.C. Admin. Code § 20-933(a)(5); *see also Sandles v. Magna Legal Servs., LLC*, 62 Misc.3d 761, 771, 90 N.Y.S.3d 843, 852 (N.Y.C. Civ. Ct., 2018). Accordingly, this claim must be dismissed.

### 2.    Retaliation Under Section 20-930

For substantially the same reasons as outline above, *see supra*, III.E., III.I.2., the Compass Defendants did not retaliate against Plaintiff under any applicable law.

### III.    CONCLUSION

For all the foregoing reasons, as well as the reasons set forth in the respective motions to dismiss filed by Defendants Slater Consulting Corp., Trove, Inc., Ian Slater, and Michael Koeneke, the Compass Defendants respectfully request that the Court dismiss all of Plaintiff's claims with prejudice.[13]

---

[13] The Compass Defendants do not waive and reserve their right to move to compel arbitration.

Dated: New York, New York
          July 25, 2024

                                        Respectfully submitted,

                                        OGLETREE, DEAKINS, NASH,
                                          SMOAK & STEWART, P.C.

                                        By: */s/ Jamie Haar*
                                              Jamie Haar
                                        599 Lexington Avenue – 17th Fl.
                                        New York, New York 10022
                                        (212) 492-2500
                                        jamie.haar@ogletree.com

                                        *Attorneys for Defendants*
                                        *Compass, Inc. and Julian Berkeley*