UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X   Civil Action No.  1:24-cv-03868-DEH

DANIELA SCIVETTI,

Plaintiff,

- against -

COMPASS, INC., SLATER CONSULTING CORP.,
TROVE PARTNERS, INC., JULIAN BERKELEY, IAN
SLATER, MICHAEL KOENEKE and BRETT
WALSDORF,

Defendants.

------------------------------------------------------------------------ X



**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO TROVE
PARTNERS, INC. AND MICHAEL KOENEKE'S MOTION TO DISMISS PLAINTIFF'S
<u>COMPLAINT</u>**


ALAN J. BENNETT, PLLC
Attorneys for Plaintiff
DANIELA SCIVETTI
369 Lexington Avenue
Suite 217
New York, New York 10017
(212) 696-2116

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES……………………………………..…………………………………..i

PRELIMINARY STATEMENT………………………………………………………….………1

THE APPLICABLE STANDARD OF REVIEW……………………………………...……..2

PLAINTIFF TIMELY COMMENCED THE SUBJECT-ACTION UNDER TITLE VII………..3

TROVE IS LIABLE TO PLAINTIFF HEREIN PURSUANT TO
THEORIES OF SUCCESSOR LIABILITY…………………………………………………...…8

KOENEKE's EXHIBIT SHOULD NOT BE CONSIDERED BY THIS COURT……………...11

THE DISCRIMINATION CAUSES OF ACTION WERE SUFFICIENTLY PLED…………12

PLAINTIFF PROPERLY PLEAD VIOLATION OF THE NYLL AS TO THE
FAILURE TO HIRE…………………………………………………………………………...17

THE ERISA CAUSE OF ACTION WAS SUFFICIENTLY PLED……………………………18

PLAINTIFF'S CLAIMS OF VIOLATIONS OF THE NEW YORK LABOR
LAW 195(1) AND (3) WERE SUFFICIENTLY PLED……………………………………..,.20

CONCLUSION…………………………………………………………………………….25

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

Acha v. Beame,
    570 F.2d 57 (2d Cir. 1978)...............................................................................4

Ass'n Against Discrim. v. City of Bridgeport,
    647 F.2d 256  (2d Cir. 1981).............................................................................4

Colodney v. Continuum Health Partners, Inc.,
    33 Employee Benefits Cas 1751 (S.D.N.Y. Apr. 15, 2004)....................................19

Cornwell v. Robinson,
    23 F.3d 694, 704 (2d Cir. 1994).......................................................................4

Dfinity Found. v. New York Times Co.,
    702 F. Supp. 3d 167 (S.D.N.Y. 2023)..................................................5, 11, 16

Dixit v. City of New York Dep't of Gen. Servs.,
    972 F. Supp. 730 (S.D.N.Y. 1997).....................................................................4

Figueroa v. RSquared NY, Inc.,
    89 F. Supp. 3d 484 (E.D.N.Y. 2015)...........................................................13, 14

Gallo v. Wonderly Co.,
    No. 1:12-CV-1868 LEK/RFT, 2014 WL 36628 (N.D.N.Y. Jan. 6, 2014)...............8-9

Genevah Chow-Tai v. Fulvio & Assocs,
    2019 N.Y. Slip Op. 32514 (N.Y. Sup. Ct. 2019).................................................3
Goodman v. Com. Lab. Servs., Inc.,
    No. 98-CV-1816, 2000 WL 151997 (N.D.N.Y. Feb. 11, 2000)..........................18-19

Ibrahim v. Fid. Brokerage Servs. LLC,
    19-CV-3821 (VEC) (S.D.N.Y. Jan. 9, 2020)......................................................15

Jacobs v. Schulhof,
    2017 N.Y. Slip Op. 31768 (N.Y. Sup. Ct. 2017)..................................................4

Liang v. USA QR Culture Indus. Dev. LLC,
    704 F. Supp. 3d 408 (S.D.N.Y. 2023)...............................................................20

Lebedev v Blavatnik,
    144 AD3d 24 [1 Dept 2016].............................................................................3

Meyenhofer v. Larsen & Toubro Infotech Ltd.,
    503 F. Supp. 3d 39 (S.D.N.Y. 2020)……………………………………………...17

Mondschein v. NY 101, Inc.,
    18-cv-05607(AMD)(CLP)(EDNY March 17, 2020)………………...……...……….2, 15

Ocampo v. 455 Hosp. LLC,
    No. 14-CV-9614 (KMK), 2016 WL 4926204 (S.D.N.Y. Sept. 15, 2016)………...…..4, 16

Patane v. Clark,
    508 F.3d 106 (2d Cir. 2007)……………………………………………………..14

Rice v. Smithtown Volkswagen,
    321 F. Supp. 3d 375 (E.D.N.Y. 2018)……..………………………..…………..12

Rivera v. N.Y. City Dept. of Correction,
    951 F. Supp. 2d 391 (E.D.N.Y. 2013)……………...…..………………………9, 14

Sotomayor v. City of New York,
    862 F. Supp. 2d 226, 248-49 (E.D.N.Y. 2012)……………………………………..4

Walter v. Rundfunk,
    03 Civ. 5676 (LAK)(JCF) (S.D.N.Y. May 11, 2004)………………………...…12, 14

## **Statutes**

Employee Retirement Income Security Act of 1974 § 510………………………………1

New York City Administrative Code……………………………………………..1

New York Executive Law § 296(6)……………………………………………...1, 12

Title VII of the Civil Rights Act of 1964……………………………………………1

## **Other Authorities**

Federal Rule of Civil Procedure 12………………………………………….…1

This Memorandum of Law is respectfully submitted in opposition to Defendant MICHAEL KOENEKE ("Koeneke") and TROVE PARTNERS, INC.'s ("Trove") Pre-Answer Motion to Dismiss (Koeneke and Trove collectively referred to herein as the "Trove Defendants"), pursuant to FRCP Rule 12(b)(6), to dismiss the Complaint (hereinafter "Plaintiff's Complaint") for its alleged failure to state various causes of action (the "Trove Defendants' Motion")[1].

## PRELIMINARY STATEMENT[2]

It is respectfully submitted that the Trove Defendants' Motion is wholly without merit, as plaintiff DANIELA SCIVETTI ("Scivetti" or "Plaintiff") has sufficiently pled facts to state against the Compass Defendants, the following viable causes of action:

    a. Gender discrimination and/or sexual harassment, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), New York State Executive Law § 296(1)(a) ("NYSHRL") and Chapter 1, Title 8 of the Administrative Code of the City of New York ("NYCHRL") (See: Defendants' Motion, Exhibit A, Plaintiff's Complaint, 1st, 3rd, 5th, 7th, 8th, and 10th causes of action- collectively the "Discrimination Causes of Action");

    b. Breach of the Employee Retirement Income Security Act of 1974 § 510 ("ERISA") (Id., 4th cause of action- the "ERISA Cause of Action");

    c. Failure to provide a proper hiring notice in violation of the NYLL (Id., 15th cause of action- the "Hiring Notice Cause of Action");

    d. Failure to provide a termination notice in violation of the NYLL (Id., 16th cause of action- the "Termination Notice Cause of Action");

---

[1] Plaintiff expressly incorporates in its entirety herein the accompanying oppositions filed to defendants COMPASS, INC. and JULIAN BERKELEY pending Pre-Answer Motion to Dismiss (the "Compass Opposition"), and defendant SLATER TEAM CONSULTING CORP. and IAN SLATER's pending Pre-Answer Motion to Dismiss (the "Slater Opposition").
[2] Unless specifically defined, capitalized terms have the meanings ascribed in Plaintiff's Complaint.

## THE APPLICABLE STANDARD OF REVIEW

"In order to survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Matson v. Bd. of Educ., 631 F.3d 57, 63 (2d Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. 662,678 (2009)) (internal quotation marks omitted). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555). Pleadings are to be construed in the light most favorable to the plaintiff. Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010). "The pleading requirements in discrimination cases are very lenient, even de minimis," Deravin v. Kerik, 335 F.3d 195,200 (2d Cir. 2003) (quoting Brown v. Coach Stores, Inc., 163 F.3d 706, 710 (2d Cir.1998)) (internal quotation marks omitted), but "a complaint's allegations must nevertheless at least 'permit the court to infer more than the mere possibility of misconduct,'" Richardson v. City of New York, No. 17-CV-9447, 2019 WL 1512646, at *2 (SDNY Apr. 8, 2019) (quoting Iqbal, 556 U.S. at 679)." Mondschein v. NY 101, Inc., 18-cv-05607(AMD)(CLP) at *4 (EDNY March 17, 2020).

Accordingly, this Honorable Court must initially accept the pled facts within Plaintiff's Complaint as true. Thereafter, the analysis turns to whether or not the required short and plain statement of facts are sufficient to show that Plaintiff has a plausible claim on its face for relief as against the Compass Defendants, not whether Plaintiff can either establish a material issue of fact, or otherwise establish as a matter of law entitlement to relief under the stated causes of action.

PLAINTIFF TIMELY COMMENCED THE SUBJECT-ACTION UNDER TITLE VII

The Trove Defendants' Motion erroneously argues that Plaintiff's claims of sexual harassment under Title VII are time-barred as Plaintiff failed to timely commence this action by the filing of a charge with the EEOC (See: Trove Defendants' Motion, p. 7- "Trove Defendants Timeliness Argument").

"On a motion to dismiss a cause of action claiming it is barred by the statute of limitations, the movant bears the initial burden of making a *prima facie* showing that the time in which to sue has expired." (internal citations omitted) Genevah Chow-Tai v. Fulvio & Assocs, 2019 N.Y. Slip Op. 32514, 1 (N.Y. Sup. Ct. 2019).

In order to meet this burden, "the defendant must establish, *inter alia*, when the plaintiff's cause of action accrued." (internal citations omitted) Lebedev v Blavatnik, 144 AD3d 24, 28 [1 Dept 2016]. "In evaluating such a motion, 'the Court must take the allegations in the complaint as true and resolve all inferences in favor of the plaintiff.'" (internal citations omitted) Genevah Chow-Tai v. Fulvio & Assocs, 2019 N.Y. Slip Op. 32514, 2 (N.Y. Sup. Ct. 2019). Towards that end, "a plaintiff's opposition to a CPLR §3211 motion "must be given [its] most favorable intendment" (internal citations omitted) 2019 N.Y. Slip Op. 32514, 1 (N.Y. Sup. Ct. 2019). Id.

"Where the movant demonstrates preliminarily that a claim is barred by the statute of limitations, the plaintiff must establish that a toll or stay is applicable or that an issue of fact exists (*see Matter of Schwartz*, 44 AD3d 779 [2d Dept 2007])." Id.

"In general, a discrimination claim under Title VII must be filed with the EEOC within 180 days of the date when the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e–5(e)(1). However, in states like New York that have their own antidiscrimination laws and

enforcement agency, the limitations period for filing claims with the EEOC is 300 days. *Id.; Ford v. Bernard Fineson Development Center,* 81 F.3d 304, 307 (2d Cir.1996). " Dixit v. City of New York Dep't of Gen. Servs., 972 F. Supp. 730, 735 (S.D.N.Y. 1997)

"In general, the statute of limitations under the NYSHRL and the NYCHRL is three years (internal citations omitted)". Sotomayor v. City of New Yor*k*, 862 F. Supp. 2d 226, 248-49 (E.D.N.Y. 2012). "However, the court can go beyond the three-year period to determine liability in hostile environment claims if the conduct is of a continuous nature and at least one discriminatory act falls within the statute of limitations" (internal citations omitted). Jacobs v. Schulhof, 2017 N.Y. Slip Op. 31768, 5 (N.Y. Sup. Ct. 2017). Further, "a continuing violation may be found where there is proof of specific ongoing discriminatory polices or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice. Where a continuing violation can be shown, the plaintiff is entitled to bring suit challenging all conduct that was a part of that violation, even conduct that occurred outside the limitations period." (internal citations omitted). Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994). See also: Ass'n Against Discrim. v. City of Bridgeport, 647 F.2d 256, 274 (2d Cir. 1981); Acha v. Beame, 570 F.2d 57, 65 (2d Cir. 1978).

"A court ruling on a Rule 12(b)(6) motion "may consider the complaint[,] ... any written instrument attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by reference, as well as matters of which judicial notice may be taken, and documents either in [the] plaintiffs' possession or of which [the] plaintiffs had knowledge and relied on in bringing suit. (internal citations and quotations omitted) Ocampo v. 455 Hosp. LLC, No. 14-CV-9614 (KMK), 2016 WL 4926204, at *3 (S.D.N.Y. Sept. 15, 2016)

4

"Judicial notice may be taken of documents integral to the complaint, as well as of certain matters of public record." (internal citations and quotations omitted) <u>Dfinity Found. v. New York Times Co.</u>, 702 F. Supp. 3d 167, 173 (S.D.N.Y. 2023), <u>aff'd</u>, No. 23-7838-CV, 2024 WL 3565762 (2d Cir. July 29, 2024).

Initially, the Trove Defendants' Motion regarding untimeliness is belied by the clear, detailed and unambiguous factual allegations set forth in Plaintiff's Complaint (to wit, that Plaintiff's complaints of sexual harassment occurred throughout the tenure of her joint and/or single employment with Compass/Slater Team Defendants and thereafter (to wit, from December of 2020 through to December of 2022 [when Compass/The Slater Team engaged in retaliatory and/or discriminatory failure to re-hire- <u>See</u>: ECF Document #1 Plaintiff's Complaint, ¶ 194-218]), but it is belied by the Slater Defendants expressly and voluntarily entering into a tolling agreement with Plaintiff prior to the commencement of the subject-action (so that the parties could resolve this matter without the commencement and prosecution of litigation- the "Tolling Agreement"). <u>See</u>, infra.

As set forth in Plaintiff's Complaint, Plaintiff filed two (2) charges with the Equal Employment Opportunity Commission ("EEOC") regarding her underlying allegations- June 16, 2023 and March 7, 2024 (<u>See</u>: Plaintiff's Complaint, ¶ 220, 236)[3].

As such, it is respectfully submitted that any and all claims alleged 300-days prior to May 5, 2023 (of note, July 9, 2022) were timely as of the filing of the Plaintiff's Compass EEOC Charge.

Regardless, in response to the Trove Defendants' Motion, Plaintiff's counsel contacted Slater Defendants counsel to advise that Trove Defendants Timeliness Argument was misplaced,

---

[3] Plaintiff's Complaint inadvertently sets forth that the Plaintiff's Compass EEOC Charge was filed on June 13, 2023- this is a typo, as Plaintiff's Compass EEOC Charge was filed on June 16, 2023.

as the Parties had entered into a Tolling Agreement, and providing counsel with the emails regarding same. Despite the obvious frivolity of Trove Defendants Timeliness Argument, and given Trove Defendants' newfound knowledge of same, Plaintiff inquired as to whether or not the Parties could stipulate to withdraw these claims, such that this Honorable Court would not waste time adjudicating the Trove Defendants Timeliness Argument when there was clear evidence to the contrary- the Trove Defendants not only refused to acknowledge the Tolling Agreement, but also objected to Plaintiff's inclusion of any emails which set forth the Tolling Agreement.

As such, the Parties sought guidance from this Honorable Court, and by Order dated September 5, 2024, the Honorable Justice Dale E. Ho granted Plaintiff's application for leave to file a redacted version of the Tolling Agreement (See: ECF # 39-41).

On or about April 27, 2023, Plaintiff furnished defendants herein with a pre-suit demand letter as to all of her underlying allegations as pled herein ("Plaintiff's Demand Letter"). In response thereto, on or about May 3, 2023, Lindsay Burke, Esq., purporting to be in-house counsel for Compass ("Compass' Counsel"), responded to Plaintiff's Demand Letter, seeking additional time to investigate the claims therein.

In response thereto, the undersigned advised that Plaintiff was amenable to providing more time for Compass' Counsel to review the claims, if Compass' Counsel confirmed which parties they represented and agreed to a tolling agreement to allow the parties time to explore and potentially resolve this matter pre-suit. In pertinent part, by email dated May 4, 2024, your undersigned stated: "Both my client and I are amenable to providing a few weeks' extension (per your request), to provide your office with the opportunity to investigate and respond to the allegations raised in my office's correspondence dated April 27, 2023. Towards that end, we would request the following: 1. Please advise **whether your office is representing not only Compass**

**and Julian Berkeley, but The Slater Team, Ian Slater and Michael Koeneke** as well- if not, please advise as to the identity of any legal counsel who may be representing them; and 2. **That your office (assuming it will be representing all of the above) enter into a Tolling Agreement, extending any and all filing/statute of limitations deadlines in any venue, for all causes of action which may result from the underlying allegations, commensurate with the time for our respective offices (or any other counsel who may thereafter be retained on behalf of your clients for this matter) to address and potentially resolve pre-suit, these allegations.** " (emphasis supplied).

In response thereto, by email dated May 5, 2023, Compass' Counsel advised that they were also representing the "Slater Team and its agents. If that changes at any point, I will let you know. Agreed as to the proposed tolling agreement."

Throughout the following months, the parties were in regular communication regarding the underlying allegations, with the tolling agreement entered into on May 5, 2023, remaining in full force and effect through to **at least** June 16, 2023, when Plaintiff filed a Charge of Discrimination with the EEOC regarding the allegations contained in Plaintiff's Demand Letter ("Plaintiff's Compass EEOC Charge").

That Trove Team Defendants now seek to dismiss Plaintiff's claims based on an alleged untimeliness when they were not only aware of the claims but entered into a tolling agreement to explore resolution of same is not only sanctionable conduct, but further retaliation for Plaintiff's pursuit of her underlying complaints.

Moreover, Plaintiff's Complaint, on its face, expressly alleges a replete, continuous, unwanted, hostile, adverse and pervasive illegal pattern of the same specific sexual harassment,

which continued unabatedly, both beyond and within the statute of limitation period for the commencement of the Discrimination Causes of Action, see infra.

Again, as Plaintiff's Complaint properly pled an ongoing pattern of sexual harassment are properly pled, including within the statute of limitation period (to wit, within three [3] years of the filing of the initial filing of this action), the continuous violation doctrine applies, and "amount to a discriminatory policy or practice". Cornwell v. Robinson, 23 F.3d 694, 704 (2d Cir. 1994). Accordingly, the Slater Defendant's Motion on this ground should be denied in its entirety.

<u>TROVE IS LIABLE TO PLAINTIFF HEREIN PURSUANT TO THEORIES OF SUCCESSOR LIABILITY</u>

Initially, it is respectfully submitted that Trove was named as a defendant herein under theories of successor liability as successor to the Slater Team, as sufficiently plead in Plaintiff's Complaint (See: ECF Document #1, Plaintiff's Complaint, ¶ 221-234).

Applying the traditional common law test, the Courts generally employ one (1) of two (2) tests to determine whether a successor corporation is liable for its predecessor: the mere continuation doctrine and the de facto merger doctrine.

"Under the traditional test, a buyer of a corporation's assets will be liable as its successor if: (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations. Courts have recognized that the mere continuation doctrine, espoused in the third element, and *de facto* merger, where a transaction, although not technically a merger, is in substance a consolidation of the seller and purchaser, "are so similar that they may be considered a single exception. Nonetheless, the continuity of ownership is essential, and without it an exception to the traditional rule-purchase of the assets alone does not impose successor liability-

cannot apply. In determining de facto merger or mere continuation, a court should consider the following: (1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) continuity of management, personnel, physical location, assets, and general business operation." (internal citations and quotation marks omitted) Gallo v. Wonderly Co., No. 1:12-CV-1868 LEK/RFT, 2014 WL 36628, at *12 (N.D.N.Y. Jan. 6, 2014).

Further, the Courts have held that "it is not necessary that all four elements of the traditional common law theory be present in order to successfully plead successor liability. Nor are the four factors of a *de facto* merger analyzed differently; they are weighed in a flexible manner, disregarding mere questions of form." Id.

It is respectfully submitted that Plaintiff's Complaint set forth the following facts with regards to Trove's successor liability herein:  that on or about October 5, 2023 Trove was incorporated ("Trove's Incorporation"- See: Plaintiff's Complaint, ¶ 221); that beginning by and around Trove's Incorporation, by and/or on behalf of Trove, a web site was created, platformed and published, wherein it was marketed, with the knowledge, advise, permission, authority, consent and/or ratification of both Slater and Koeneke, that both Slater and Koeneke were the founders of Trove (Id. at ¶ 222); That both Slater and Koeneke were and are owners, officers, directors and/or shareholders of Trove (Id. at ¶ 223); that upon Trove's Incorporation, that Trove began operating and conducting business, and remains operating and conducting business, as a department/division of Compass, with the same business purpose of conducting and transacting Compass' real estate business, with Trove being subject to the same aforesaid alleged rules, policies and regulations, as the other Compass departments/divisions (hereinafter "Trove Business

Operations"- Id. at ¶ 224); that from on or about Trove's Incorporation, The Slater Team ceased conducting new Compass' real estate business as one of Compass departments/divisions (Id. at ¶ 225); that from on or about the commencement of Trove's Business Operations, The Slater Team ceased employing, and/or having assigned thereto, any personnel (Id. at ¶ 226); that from on or about the commencement of Trove's Business Operations, The Slater Team sold, moved, traded or otherwise transferred all assets of The Slater Team to Trove, including but not limited to, its office, clients, contacts, business operations, real estate sales and rental listings, good-will and the personnel theretofore hired by/assigned to The Slater Team (Id. at ¶ 227); that from on or about the commencement of Trove's Business Operations, Trove absorbed, acquired, attained, purchased and/or assumed all of the Slater Team's assets, including but not limited to, its office, clients, contacts, business operations, real estate sales and rental listings, good-will and the personnel theretofore hired by/assigned to The Slater Team(Id. at ¶ 228); that from on or about the commencement of Trove's Business Operations, Trove assumed, purchased, absorbed and/or acquired all of the liabilities of The Slater Team, including but limited to, the accounts payable, business expenses, overhead, contractual obligations and payroll (Id. at ¶ 229); that at all times hereinafter alleged, Trove assumed and continued the general business operations, in the place of, The Slater Team, and replaced in toto The Slater Team as one of the Compass departments/divisions (Id. at ¶ 230); that from on or about the commencement of Trove's Business Operations, The Slater Team de facto dissolved its business (Id. at ¶ 231); that from on or about the commencement of Trove's Business Operations, as a matter of fact and/or law, Trove was and is the mere continuation of, and the successor to, The Slater Team (Id. at ¶ 232); that in the marketing of Trove, including on a social media post on Slater's own Instagram (@IanSlater) dated January 18, 2024, Slater admitted that Trove was "an evolution of [The] Slater Team" (Id. at ¶

233); that as a matter of fact and/or law, Trove bears and assumes successor liability to Scivetti, for any and all of the allegations, causes of action and prayers for relief set forth herein, from which The Slater Team would be liable to Scivetti (Id. at ¶ 234).

It is readily apparent that Plaintiff sufficiently pled that Trove was, and is, a successor of the Slater Team, and as such, liable to Scivetti herein.

Of note, The Trove Defendants Motion makes no arguments as to Plaintiff's pleadings regarding successor liability. As such, it is respectfully submitted that any and all causes of action which are found by this Honorable Court to be properly plead as to the Slater Team/Compass, be deemed to be properly plead as against the Trove Defendants.

<u>KOENEKE's EXHIBIT SHOULD NOT BE CONSIDERED BY THIS COURT</u>

Moreover, as above, "A court ruling on a Rule 12(b)(6) motion "may consider the complaint[,] ... any written instrument attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by reference, as well as matters of which judicial notice may be taken, and documents either in [the] plaintiffs' possession or of which [the] plaintiffs had knowledge and relied on in bringing suit. (internal citations and quotations omitted) <u>Ocampo v. 455 Hosp. LLC</u>, No. 14-CV-9614 (KMK), 2016 WL 4926204, at *3 (S.D.N.Y. Sept. 15, 2016), and that judicial notice "may be taken of documents integral to the complaint, as well as of certain matters of public record." (internal citations and quotations omitted) <u>Dfinity Found. v. New York Times Co.</u>, 702 F. Supp. 3d 167, 173 (S.D.N.Y. 2023), <u>aff'd</u>, No. 23-7838-CV, 2024 WL 3565762 (2d Cir. July 29, 2024).

The Trove Defendants Motion annexes what purports to be a screenshot of a text message between Plaintiff and Koeneke, alleging to demonstrate "proof" that Scivetti's allegations in her Complaint are false. However, the Trove Defendants Motion misapprehends the standard by

which this Honorable Court reviews the subject-application- it is not whether or not Plaintiff will ultimately be successful in her claims (or can prove them), but rather, if Plaintiff has properly plead her allegations with facts and specificity. A single text message cannot be dispositive of Plaintiff's voluminous and specific allegations against Koeneke in her Complaint- especially as the allegations of sexual harassment not only post-date when this text was allegedly exchanged (September 18, 2021- See: Koeneke's Declaration in Support of the Trove Defendants' Motion), but given that these allegations have apparently been confirmed by Walsdorf (see infra). Finally, that is simply not the standard of review at this stage.

As such, it is respectfully submitted that this Honorable Court exclude Koeneke's Exhibit "A" from its review on the subject-motion.

<u>THE DISCRIMINATION CAUSES OF ACTION WERE SUFFICIENTLY PLED</u>

"Under both the NYSHRL and the NYCHRL, federal standards are used to determine hostile environment and harassment claims. In order to adequately plead a violation of Title VII and New York Executive Law § 296, Ms. Walter must state a claim under either a hostile environment or a quid pro quo theory." (internal citations omitted) <u>Walter v. Rundfunk</u>, 03 Civ. 5676 (LAK)(JCF), at *10-11 (S.D.N.Y. May 11, 2004).

"Ultimately, to avoid dismissal under <u>FRCP 12(b)(6)</u>, a plaintiff need only plead facts sufficient to support the conclusion that [ ]he was faced with 'harassment ... of such quality or quantity that a reasonable employee would find the conditions of [his] employment altered for the worse.' " (internal citations omitted) <u>Rice v. Smithtown Volkswagen</u>, 321 F. Supp. 3d 375, 388 (E.D.N.Y. 2018).

"The *prima facie* case operates as a flexible evidentiary standard" that "should not be transposed into a rigid pleading standard for discrimination cases." (internal citations omitted).  Figueroa v. RSquared NY, Inc., 89 F. Supp. 3d 484, 489 (E.D.N.Y. 2015).

Plaintiff's Complaint sets forth the following specific, non-formulaic allegations, regarding the gender discrimination/sexual harassment and adverse treatment therefrom that Plaintiff was forced to endure between on or about July 2021-August 2022, despite Plaintiff repeatedly reporting the gender discrimination/sexual harassment to her supervisors (See: Plaintiff's Complaint, ¶ 161-164) to no avail ("Koeneke's Sexual Harassment"): Koeneke referring to Scivetti as a "love" or a "bitch" depending on his mood (Id. 209); Koeneke texting Scivetti "I love you" outside of work hours (Id.); Koeneke's repeated offensive and misgynostic characterization of the women in the workplace, including, Koeneke's characterization of them as "dramatic", "bitches" or "hot" (Id.); Koeneke consistently texting inappropriate, sexist and mysogysnitic texts to The Slater Team WhatsApp group chat (Id.); Koeneke willfully embarrassing Scivetti in front of her co-workers with false accusations of Scivetti dating a male client, while discussing company policies and procedures about the financial vetting of clients in advance of showing them available listings (Id.); Koeneke repeatedly and brazenly disparaged and demeaned Scivetti's work ethic and professionalism to her co-workers (including that Scivetti "…did not do any work", that Scivetti was "useless", and wrongfully accused Scivetti of intentionally failing to input transactions on Koeneke's agent page) (Id. at 212); Scivetti being stripped of her duties and relegated by Koeneke to do menial tasks (Id.); Scivetti being admonished by BRETT WALSDORF ("Walsdorf"), her supervisor and defendant herein, with Walsdorf advising Scivetti she should get on Koeneke's

good side[4] (Id. at 212); and ultimately, Scivetti's termination on or about August 25, 2022 ("Scivetti's Unlawful Termination"- Id.).

In short, the causes of action for gender discrimination/sexual harassment and retaliation for complaints thereof, were properly stated, as Plaintiff's Complaint clearly pled not only one, but multiple "tangible employment actions" Rivera v. N.Y. City Dept. of Correction, 951 F. Supp. 2d 391, 400 (E.D.N.Y. 2013).  While Defendants' Motion attempts to argue the merits of Plaintiff's claims, "the Court asks only whether a plaintiff has pled a *prima facie* case, not whether a plaintiff has established that case. Thus, the standard is simply whether [the] plaintiff's complaint, construed liberally, satisfies the federal pleading requirements for a claim" of discrimination. " Figueroa v. RSquared NY, Inc., 89 F. Supp. 3d 484, 489 (EDNY 2015).

In the alternative, "to state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) "is objectively severe or pervasive — that is, . . . creates an environment that a reasonable person would find hostile or abusive"; (2) creates an environment "that the plaintiff subjectively perceives as hostile or abusive"; and (3) "creates such an environment because of the plaintiff's sex." (internal citations omitted). Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007).

Again, "Under both the NYSHRL and the NYCHRL, federal standards are used to determine hostile environment and harassment claims." Walter v. Rundfunk, 03 Civ. 5676 (LAK)(JCF), at *10-11 (S.D.N.Y. May 11, 2004).

Following these elements, as above, Plaintiff's Complaint specifically alleged that: (1) Compass was Plaintiff's employer; 2) that Koeneke, Plaintiff's supervisor and employee or

---

[4] By So-Ordered Stipulation dated September 5, 2024, this matter was partially discontinued against Walsdorf (ECF Document #4).

independent contractor of Compass, engaged in a replete, continuous, unwanted, hostile, adverse and pervasive pattern of gender discrimination and sexual harassment; 3) that Koeneke created, and that Compass fostered and/or permitted to exist, despite knowledge thereof, a subjectively hostile and abusive environment based on sex; and (3) this environment was due to Plaintiff's membership in a protected class. Accordingly, a cause of action for gender discrimination under the NYSHRL has properly been stated.

Regarding the NYCHRL, "because 'the NYSHRL represents a floor below which the City's Human Rights law cannot fall [,] ... claims found sufficient under the NYSHRL necessarily must survive under the NYCHRL.'" (internal citations omitted). <u>Mondschein v. NY 101, Inc., et al.</u> 18-cv-05607(AMD)(CLP) at *10 (EDNY March 17, 2020).

"To state a claim for discrimination under the NYCHRL, a plaintiff must only show differential treatment of any degree based on a discriminatory motive." (internal citations omitted) <u>Thomson v. Odyssey House,</u> 14-CV-3857 (MKB), at *48 (E.D.N.Y. Sep. 21, 2015). "To plead a sex discrimination claim under the NYCHRL, Plaintiff need only allege facts showing that she was treated "less well" because of her sex." (internal citations omitted) <u>Ibrahim v. Fid. Brokerage Servs. LLC</u>, 19-CV-3821 (VEC), at *6-7 (S.D.N.Y. Jan. 9, 2020).

As above, Plaintiffs' Complaint alleges specific adverse treatment regarding the terms and conditions of her employment, as a proximate result of the sexual harassment. The NYCHRL requires that Plaintiff only need allege facts that she was treated "less well" as a proximate result of the alleged discrimination. <u>Id</u>. Defendants' Motion erroneously argues the underlying merits of Plaintiff's claims, rather than the appropriate legal standard of the mere pleading thereof. Plaintiff is not now required to prove her case, but merely to properly plead it.

Moreover, as above, "A court ruling on a Rule 12(b)(6) motion "may consider the complaint[,] ... any written instrument attached to the complaint as an exhibit[,] or any statements or documents incorporated in it by reference, as well as matters of which judicial notice may be taken, and documents either in [the] plaintiffs' possession or of which [the] plaintiffs had knowledge and relied on in bringing suit. (internal citations and quotations omitted) Ocampo v. 455 Hosp. LLC, No. 14-CV-9614 (KMK), 2016 WL 4926204, at *3 (S.D.N.Y. Sept. 15, 2016), and that judicial notice "may be taken of documents integral to the complaint, as well as of certain matters of public record." (internal citations and quotations omitted) Dfinity Found. v. New York Times Co., 702 F. Supp. 3d 167, 173 (S.D.N.Y. 2023), aff'd, No. 23-7838-CV, 2024 WL 3565762 (2d Cir. July 29, 2024).

Plaintiff respectfully requests that this Honorable Court take judicial notice of the Stipulation of Partial Settlement and accompanying Affidavit on behalf of Walsdorf (the "Walsdorf Affidavit"- ECF #43-44). As set forth in the Walsdorf Affidavit: Slater was the sole owner of the Slater Team  (Walsdorf Affiavit ¶ 10); Walsdorf was a supervisor of the Slater Team (Id., at ¶ 61-62); Walsdorf and Koeneke supervised Scivetti (Id., at ¶ 63); that Berkeley managed and supervised the Slater Team (Id., at ¶ 14-16, 34); that Scivetti and other individuals of the Slater Team repeatedly complained to Walsdorf about Koeneke's Sexual Harassment (Id., at ¶ 65-67); that in or about the summer of 2022, Walsdorf informed Slater of the complaints of Koeneke's Sexual Harassment (Id., at ¶ 68); that Wasldorf encouraged Scivetti to apply for other positions at Compass following her termination, forwarding an ad for an open position in or about October 19, 2022 (Id., at ¶ 72).

That is, both Plaintiff's Complaint and Walsdorf's Affidavit sets forth clearly that Slater had express notice of Scivetti's complaints of Koeneke's Sexual Harassment.

That is, Scivetti plead with specificity the retaliatory acts she endured for engaging in the protected activity of complaining of Unpaid Commissions and Koeneke's Sexual Harassment .

## PLAINTIFF PROPERLY PLEAD VIOLATION OF THE NYLL AS TO THE FAILURE TO HIRE

The Trove Defendants Motion' erroneously argues that Plaintiff failed to properly plead that she was further retaliated against in being denied re-employment after Scivetti's Termination.

"In the context of a claim for failure to hire, a plaintiff complaining of a discriminatory failure to hire must first make out a prima facie case of discrimination by showing that (1) he is a member of a protected class, (2) he was qualified for the job for which he applied, (3) he was denied the job, and (4) the denial occurred under circumstances that give rise to an inference of invidious discrimination." *Szewczyk v. City of New York*, at *4 (E.D.N.Y. July 14, 2016) (quoting *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010)). [...] A prima facie case of hiring discrimination, as described above, requires showing that a person "applied for an available position for which [they were] qualified" but was "rejected." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)." Meyenhofer v. Larsen & Toubro Infotech Ltd., 503 F. Supp.3d 39, 48 (S.D.N.Y. 2020).

Scivetti in Plaintiff's Complaint plead the following facts as it relates to her claims of discriminatory failure to hire: On or about October 19, 2022, Compass issued internal emails, including by Berkeley, seeking candidates to apply for an open employment assistant position, for which Scivetti was qualified supervisors (See: Plaintiff's Complaint, ¶ 213, et seq.); that Walsdorf notified Scivetti thereof, directing Scivetti to apply (Id.); on or about December 21, 2022, Scivetti applied via email for an open assistant position within Compass entitled the Hudson Advisory Team (the "December Job Post"- Id.); on or about December 21, 2022, Scivetti received an email response to her application for the December Job Post from Spencer Simon ("Simon", Compass'

Hudson Advisory Team's Director Of Operations & Client Relations), with Simon advising that he would contact Scivetti for "next steps" (Id.); that notwithstanding open Compass employment positions for which Defendants acknowledged that Scivetti was both qualified and applied for, neither Simon nor any one from Compass ever contacted Scivetti to either discuss the "next steps" for, or to offer, re-employment thereat (Id.); that Compass refused, and/or intentionally failed to reasonably address, process and consider Scivetti's application for re-employment (Id.); that the Defendants knew about Scivetti's application for re-employment with Compass, intentionally participated and/or aided and abetted in further retaliation for either retaliation for Scivetti's complaints of either Koeneke's Sexual Harassment and/or Unpaid Commission, and/or a separate act of unlawful employment discrimination in violation of applicable Federal, State and City of New York laws (Id.).

In short, and as necessitated by the case law on this subject, Scivetiti pled with specificity that: she was a member of a protected class, she was qualified for the job for which she applied, she was denied the job, and the denial occurred under circumstances that give rise to an inference of invidious discrimination.

As such, the Trove Defendants Motion should be denied on this ground.

### THE ERISA CAUSE OF ACTION WAS SUFFICIENTLY PLED
The Trove Defendants' Motion erroneously argues that Plaintiff has not properly pled a violation of ERISA, in failing to provide Plaintiff with a COBRA notice following Scivetti's Termination.

"COBRA provides that employers must allow former employees to continue health care coverage under the employer's plan if a qualifying event occurs. 29 U.S.C. § 1161. Termination of employment is considered a qualifying event. § 1163(2). When a covered employee is terminated, the employer must notify the group health plan administrator within 30 days of the termination. §

1166(a)(1). The plan administrator must then notify the discharged employee and other qualified beneficiaries of their COBRA rights within 14 days of the date that the administrator was notified of the qualifying event. § 1166(c)." Goodman v. Com. Lab. Servs., Inc., No. 98-CV-1816, 2000 WL 151997, at *2 (N.D.N.Y. Feb. 11, 2000).

Initially, the Trove Defendants argument that Plaintiff did not pled that the Slater Team employed more than twenty (20) employees is erroneous, and yet again, misplaced. As set forth in the Compass Opposition, Plaintiff pled in Plaintiff's Complaint that Compass and the Slater Team were single employers of Scivetti (See: Plaintiff's Complaint, ¶ 186-187, 154, 156).

For purposes of brevity, Plaintiff respectfully refers this Honorable Court to the Compass Opposition as it relates to single and joint employment of Plaintiff alleged herein. See: Compass Opposition, p. 3.

As Plaintiff's Complaint alleges that Compass employed more than fifteen (15) employees (See: Plaintiff's Complaint, ¶ 128-130), that the Slater Team was a department/division of Compass which itself had more than fifteen (15) employees (misclassified or otherwise-Id. at ¶ 132-135), in the aggregate it is alleged that Compass/the Slater Team, as a single employer had more than thirty (30) employees at all relevant times alleged.

"In order to state a claim for relief, a Plaintiff must: (1) allege the existence of a qualified healthcare plan governed by COBRA; (2) name the plan administrator as a defendant; and (3) allege that his employer is the plan administrator if no separate administrator has been designated. Failure to do so warrants dismissal of this claim. *See Colodney v. Continuum Health Partners, Inc.*, 33 Employee Benefits Cas 1751 (S.D.N.Y. Apr. 15, 2004)."

Herein, Plaintiff alleged that Compass/The Slater Team provided health benefits to Scivetti pursuant to ERISA (See: Plaintiff's Complaint ¶ 135, 195, 280-281); Compass, The Slater Team

and Trove (as successor) are named as defendants herein; and that Compass and The Slater Team administered the plan (Id.).

Scivetti's claims with respect to the ERISA violation are not only clear, but properly pled per the statute and case law. Thus, it is respectfully submitted that the Trove Defendants' Motion should be denied with respect to Plaintiff's 4th cause of action.

## PLAINTIFF'S CLAIMS OF VIOLATIONS OF THE NEW YORK LABOR LAW 195(1) AND (3) WERE SUFFICIENTLY PLED

"Courts that have found standing for wage notice and wage statement claims under New York law after *TransUnion* have done so where plaintiffs alleged specific injuries stemming from the lack of those documents. *See, e.g., Lipstein v. 20X Hospitality LLC*, No. 22-CV-04812, 2023 WL 6124048, at *9 (S.D.N.Y. Sept. 19, 2023) (finding standing where plaintiff alleged that the lack of wage notices and wage statements kept him from realizing that he was being underpaid and thereby preventing him from taking appropriate action to obtain the payments due to him); *Metcalf v. TransPerfect Translations International, Inc.*, No. 19-CV-10104, 2023 WL 2674743, at *6 (S.D.N.Y. Mar. 29, 2023) (finding standing where plaintiffs alleged that inaccurate wage notices and wage statements prevented them from knowing whether and to what extent they had been underpaid)." Liang v. USA QR Culture Indus. Dev. LLC, 704 F. Supp. 3d 408, 416 (S.D.N.Y. 2023).

The Trove Defendants Motion erroneously argues that Plaintiff does not have the standing to bring causes of action for violations of NYLL 195(1) and 195(3) due to Plaintiff's alleged failure to plead an injury stemming from the lack of documents.

However, it is respectfully submitted that Plaintiff sufficiently pled that Compass/The Slater Team misclassified Plaintiff as an independent contractor, such that any hiring notice and

wage statements provided to Scivetti was incorrect and improper as a matter of law, and as a result, Plaintiff was directly damaged. (<u>See</u>: Plaintiff's Complaint: ¶ 196, 462, 463).

As such, the Trove Defendants Motion with regards to 13th, 14th and 15th causes of action be denied on this ground.

CONCLUSION

WHEREFORE, Scivetti respectfully requests that this Honorable Court deny Defendants' Motion in its entirety, along with such other, further and different relief as to this Honorable Court may seem appropriate and equitable.

Dated:  New York, New York
            September 23, 2024

ALAN J. BENNETT, PLLC

By:_____
ALAN J. BENNETT, ESQ. (AJB-1635)
Attorneys for Plaintiff
DANIELA SCIVETTI
369 Lexington Avenue
Suite 213
New York, New York 10017
(212) 696-2116