UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DANIELA SCIVETTI, | |
|                 Plaintiff(s), | 24-CV-3868 (DEH) |
| v. | **OPINION AND ORDER** |
| COMPASS INC., et al, | |
|                 Defendant(s). | |

DALE E. HO, United States District Judge:

Plaintiff Daniela Scivetti brings this action against her former employer and several individual supervisory employees ("Defendants"), alleging discrimination on the basis of her gender and retaliation for opposing that discrimination, in addition to other claims. Specifically, Scivetti alleges that she was sexually harassed by several of her supervisors, and that Defendants failed to respond to or prevent said harassment, creating a hostile and unsafe workplace. Scivetti further alleges that, when she brought the alleged harassment to the attention of her employer, she was ultimately retaliated against, in violation of Title VII of the Civil Rights Act, as well as several provisions of New York state law. Defendants deny these allegations and have moved to dismiss her claims pursuant to Rules 12(b)(1) and 12(b)(6).[1] ECF Nos. 27, 29, and 35. For the reasons set forth below, the Motions to Dismiss are **GRANTED**. However, Plaintiff will be given an opportunity to seek leave to amend the Complaint to cure the defects identified by the Court in this Opinion.

---

[1] All references to Rules are to the Federal Rules of Civil Procedure.

## BACKGROUND

Unless otherwise stated, the following facts are taken from the Complaint and are assumed to be true solely for purposes of adjudicating Defendants' motions. *See Buon v. Spindler*, 65 F.4th 64, 69 n.1 (2d Cir. 2023).[2]

Scivetti alleges that, for several years, she was employed by Defendant Corporations Compass, Inc., ("Compass"), Slater Consulting Corp. ("Slater Corp"), and Trove Partners Inc. ("Trove"). Compl., ECF No. 1, ¶ 194. The individual defendants—Julian Berkeley, Ian Slater, Michael Koeneke, and Brett Walsdorf—were Scivetti's supervisors. *Id.* ¶¶ 18–21. Walsdorf ultimately settled with Scivetti around the time that the several Motions to Dismiss were filed. ECF No. 44. However, the claims against the other Defendants remain.

Scivetti experienced sexual harassment and was forced to work in a hostile work environment. She primarily alleges harassment from Koeneke, consisting of the following allegations:

i. Referring to Scivetti as either a "love" or a "bitch", depending on Koeneke's mood;

ii. Constantly and brazenly commenting on Scivetti's appearance, and that of other the female employees of Employer;

iii. Despite knowing that Scivetti's work hours were between on or about 9:30 am-6:00 pm, and despite admitting that it was inappropriate to do so, Koeneke repeatedly texted Scivetti prior to work hours (between on and around 6:00 am-7:00 am) with alleged work assignments, as well as directing Scivetti to perform personal errands for him, notwithstanding Slater advising that such were not to be a part of Scivetti's assigned duties and responsibilities;

iv. On or about September 18, 2021, texting Scivetti "I love you" outside of work hours;

---

[2] In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

> v. Starting in or about February of 2022, repeatedly making offensive misogynistic and derogatory references and remarks about/towards women in the workplace, including Koeneke's characterization of them as "dramatic", "bitches" or "hot";
>
> vi. Starting in or about February of 2022, consistently texting inappropriate, sexist and mysogysnitic texts to The Slater Team WhatsApp group chat;
>
> vii. On or about June 22, 2022, willfully embarrassing Scivetti in front of her co-workers with false accusations of Scivetti dating a male client, while discussing company policies and procedures about the financial vetting of clients in advance of showing them available listings;

*Id.* ¶ 209. This harassment was "on-going" at least until July 27, 2022. *Id.* ¶ 210.

Scivetti repeatedly reported this harassment to a supervisor, to no avail. *Id.* She informed Brett Walsdorf, who assumed a "supervisory role" within Slater Corp. in June 2022, of the harassment she faced and also of unpaid commissions that she felt she was legally entitled to. *Id.* Walsdorf acknowledged Scivetti's complaint and agreed that "Koeneke's Sexual Harassment had become a '…serious problem with the women on [the Slater] team.'" *Id.* However, Walsdorf not only failed to take any action in response to Scivetti's complaint; he was "an active participant" in a "pervasive pattern of sexual harassment against Scivetti." *Id.* Walsdorf would describe in "graphic detail" the "sexual exploits of a friend who Walsdorf followed on Snapchat and/or Instagram." *Id.* These conversations occurred in front of Slater Team employees. *Id.*

Despite Scivetti's several complaints, Defendants took no action to investigate the offending conduct. *Id.* ¶ 211. Rather, Walsdorf "intentionally attempted to dissuade Scivetti from further pursuit of such complaints, warning and threatening Scivetti with adverse treatment with respect to the terms and conditions and the duties and responsibilities of Scivetti's position." *Id.* ¶ 212. She does not allege threats from any other supervisory employees at Slater Corp. or Compass.

Beyond Walsdorf, Scivetti does not allege that she complained to any other employees at Compass or the Slater Team about Koeneke's behavior. She does allege that Walsdorf informed

Slater of Koeneke's behavior generally, *id.* ¶ 210, but she does not allege that anyone other than Walsdorf was aware of Scivetti's specific complaints.

Defendants ultimately retaliated against Scivetti through a relegation to "menial tasks," eventual termination of her position, and post-termination repercussions such as the stripping of her status as a "Compass licensed real estate agent." *Id.* ¶ 212. Defendants offered to pay Scivetti her owed commission, but only if she agreed to a general release of all claims against her employer. *Id.* Scivetti also attempted to apply to new positions within the company following her termination, but despite being well-qualified, she was not hired in retaliation for her complaints about the ongoing sexual harassment in the workplace. *Id.* ¶¶ 214-217. But when contacted by a third-party, her employer gave a glowing review of Scivetti's work quality and stated that there were no "weaknesses" in her performance. *Id.* ¶ 219.

On June 13, 2023, Scivetti filed a complaint with the U.S. Equal Employment Opportunity Commission (the "EEOC"), alleging sexual harassment, gender discrimination, and retaliation against both Compass and the Slater Team. *Id.* ¶ 220. During the pendency of her complaint, the Slater Team was reincorporated as Trove. *Id.* ¶ 221. On March 26, 2024, the EEOC issued a Right to Sue Letter, allowing Scivetti to initiate this action.

Scivetti filed her complaint before this Court on May 19, 2024. ECF No. 1. Each of the Defendants separately moved to dismiss on July 25, 2024. ECF Nos. 28, 30, 36. Prior to responding, Scivetti announced a settlement with Defendant Walsdorf, to which she attached an affidavit from Walsdorf verifying many of Scivetti's allegations. See ECF No. 43. Scivetti then filed a response to each motion on September 23, 2024, basing a substantial portion of the response on Walsdorf's declaration. See ECF Nos. 45–47.

As relevant to Compass's motion, there is also a dispute as to whether Defendants are properly classified as Scivetti's employer. Scivetti alleges that each of Compass, Slater, and Trove

4

were her "employer(s)" under several statutory provisions. She also alleges further details, namely that Compass and the Slater team "jointly supervised, directed, and controlled" her employment. Compl. ¶¶ 40, 49, 58. As to Compass, Scivetti alleged specific details as to how Compass set the parameters of her employment, including:

    i. Requiring Scivetti to submit to on-boarding training from Compass, and requiring Scivetti to comply with Compass' Policies And Procedures (Scivetti did not receive separate and distinct on-boarding training, or any policies and procedures regarding her position, from The Slater Team);

    ii. Setting Scivetti's base work schedule to be from Monday's-Friday's, between 9:30 am-6:00 pm;

    iii. Requiring Scivetti's daily presence at The Slater Team's assigned office;

    iv. Requiring Scivetti to use for her position, a Compass-branded computer for all work;

    v. Requiring Scivetti use a Compass-branded entry pass which allowed access to The Slater Team's assigned office;

    vi. Requiring Scivetti to use/display Compass-branded apparel, including but not limited to: water bottles, bags, t-shirts and hats;

    vii. attendance at both Compass' company-wide meetings, and at The Slater Team internal meetings;

    viii. Requriring the use of Compass-branded transaction documents and deal packages when working with Compass clients on Compass' Real Estate Business transactions;

    ix. Requiring any and all work to be performed through Compass' internal cloud portal;

    x. Requiring Scivetti to use a Compass-branded email address for any and all work done on Compass' Real Estate Business transactions;

    xi. Holding Scivetti's real estate agent license, and preventing Scivetti from working for any Compass competitor or other similarly-situated business;

    xii. Requiring Scivetti to submit all business expenses forms, and Compass' Real Estate Business transactions closed by The Slater Team, through Compass' portal.

Compl. ¶¶ 199–200.

5

**LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In assessing the complaint, [a court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor." *Id.* at 106–07. However, the court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'" *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A complaint is properly dismissed where, as a matter of law, 'the allegations in a complaint, however true, could not raise a claim of entitlement to relief.'" *Rubenstein v. Ishizuka*, No. 23 Civ. 4332, 2025 WL 1489375, at *2 (S.D.N.Y. May 23, 2025) (quoting *Twombly*, 550 U.S. at 558).

**DISCUSSION**

Scivetti alleges a total of 19 causes of action: four federal, and fifteen based in state law. For the most part, the Court concludes that Scivetti has plausibly alleged illegal discriminatory conduct on behalf of Defendants. However, due to pleading defects, all of Scivetti's federal claims must be dismissed, and the Court declines at this time to exercise supplemental jurisdiction over the remaining state counts. *See Phhhoto Inc. v. Meta Platforms, Inc.*, 123 F.4th 592, 601 n.4 (2d Cir. 2024).

Within the briefing on these various motions, both Plaintiff and Defendants relied on documentary evidence from outside the complaint. *See, e.g.,* Walsdorf Decl., ECF No. 43-2; Koeneke Decl., ECF No. 27. On a motion to dismiss, the Court assesses the complaint, not outside evidence. Considering documents and evidence from both sides is properly reserved for summary judgment; to do so on a motion to dismiss is reversible error. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 2002). And while a Court can take judicial notice of the existence of a

6

document, it is improper to take notice of the facts within said document, as Scivetti asks this Court to do. *See* ECF No. 46 at 12. Thus, the Court conducts its analysis in this Opinion considering only the allegations within the Complaint itself. But in light of the extra-record evidence relied on by the parties, the Court concludes that the proper procedure here is to provide Plaintiff with an opportunity to seek leave to amend her Complaint with, *inter alia*, additional allegations based on the evidentiary submissions. While the case is **DISMISSED**, Scivetti will be provided an opportunity to seek leave to amend her complaint to correct the errors identified in this Opinion.

**I.    Scivetti has adequately alleged that Compass was her employer.**

To begin, the Court reject's Compass' argument that Scivetti failed to plead the existence of an employment relationship. "The existence of an employer-employee relationship is a primary element of Title VII claims." *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006). "To prevail in an employment action against a defendant who is not the plaintiff's direct employer, the plaintiff must establish that the defendant is part of an 'integrated enterprise' with the employer, thus making one liable for the illegal acts of the other." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 341 (2d Cir. 2000). Under Title VII, a plaintiff can have one or more "employers" that could be subject to liability in the event of unlawful discrimination. *Arculeo v. On–Site Sales & Mktg., L.L.C.*, 425 F.3d 193, 198 (2d Cir.2005). Whether two related entities are sufficiently integrated to be treated as a single or joint employer is generally a question of fact not suitable to resolution on a motion to dismiss. *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 226 (2d Cir. 2014).

To determine an employment relationship, courts look to a non-exhaustive list of factors set forth by the Supreme Court in *Community for Creative Non-Violence v. Reid*, including:

> (1) the hiring party's right to control the manner and means by which the product is accomplished[;] ... (2) the skill required; (3) the source of the instrumentalities and tools; (4) the location of the work; (5) the duration of the relationship between the parties; (6) whether the hiring party has the right to assign additional projects to the hired party; (7) the extent of the hired party's discretion over when and how long to work; (8) the method

of payment; (9) the hired party's role in hiring and paying assistants; (10) whether the work is part of the regular business of the hiring party; (11) whether the hiring party is in business; (12) the provision of employee benefits; (13) and the tax treatment of the hired party.

*Bautista v. PR Gramercy Square Condo.*, 642 F. Supp. 3d 411, 421 (S.D.N.Y. 2022) (citing 490 U.S. 730, 751-52 (1989)). Clearly, much of this analysis is factual in nature, which generally makes it improper to decide a dispute on this issue on a motion to dismiss. This is why, to survive a motion to dismiss, a plaintiff need only allege facts sufficient to put the defendant "on notice of the theory of employer liability upon which [the] claims are based." *Fowler v. Scores Holding Co., Inc.*, 677 F. Supp. 2d 673, 681 (S.D.N.Y. 2010); *Barbosa v. Continuum Health Partners, Inc.*, 716 F. Supp. 2d 210, 219 (S.D.N.Y. 2010) ("In order to state a claim against the defendants other than [the] direct, formal employer on the basis of the joint-employer doctrine, [plaintiffs] must plead enough facts so that the claim is facially plausible and gives fair notice to defendants of [their] theory of employer liability."); *Lawrence v. Int'l Bus. Mach. Corp.*, No. 12 Civ. 8433 (DLC), 2017 WL 3278917, at *6 (S.D.N.Y. Aug. 1, 2017) ("The joint employer and single employer doctrines frequently require discovery to resolve.").

At this stage, Scivetti has sufficiently alleged a joint employment relationship with Compass so as to proceed to discovery.[3] For a joint employer relationship, courts look to whether an employer "(1) did the hiring and firing; (2) directly administered any disciplinary procedures;

---

[3] While Scivetti has adequately alleged a plausible joint-employer relationship, she fails to allege a plausible single employer relationship. "A 'single employer' situation exists 'where two nominally separate entities are actually part of a single integrated enterprise ....'" *Arculeo*, 425 F.3d at 198 (citing *Ditch Clinton's Ditch Co-op Co. v. N.L.R.B.*, 778 F.2d 132, 137 (2d Cir. 1985)). Factors in determining whether a single employer relationship exists include: "(1) interrelation of operations; (2) centralized control of labor relations; (3) common management; and (4) common ownership or financial control." Griffin, 835 F.3d at 292. Nowhere in the complaint does Scivetti allege that Compass had involvement in hiring and firing, which are the most important of these factors. Nor does Scivetti allege common ownership, control, or any facts suggesting that Compass and the Slater Team were constructively a single entity.

(3) maintained records of hours, handled the payroll, or provided insurance; (4) directly supervised the employees; or (5) participated in the collective bargaining process." *Lawrence v. Int'l Bus. Mach. Corp.*, No. 12CV8433(DLC), 2017 WL 3278917, at *5 (S.D.N.Y. Aug. 1, 2017). She alleges that Compass managed her onboarding and training, set her hours and location of work, mandated use of Compass-branded work materials and apparel, required use of Compass internal software and attendance at Compass company-wide meetings, issued Scivetti a Compass email address, and managed her real estate license. Compl. ¶¶ 199-200. These allegations clearly establish the "guidepost" of "control" necessary for a Title VII claim to proceed to discovery against an alleged employer. *See Bautista*, 642 F. Supp. 3d at 421. Thus, the claims against Compass as an employer cannot be dismissed on this basis.

## II.     Scivetti's Title VII Discrimination Claim fails because it is untimely

As discussed above, Scivetti alleges several instances of sex-based harassment during the course of her employment, including frequent discussion of graphic sexual exploits in the office, constant reference to her as "love" or "bitch," and insinuation of sexual acts between herself and a client. Compl. ¶ 209. However, "Title VII requires that individuals aggrieved by acts of discrimination file a charge with the EEOC within . . . 300 days 'after the alleged unlawful employment practice occurred.'" *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78-79 (2d Cir. 2015). "Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Patterson v. Cnty. of Oneida, N.Y.*, 375 F.3d 206, 220 (2d Cir. 2004) (citation and quotation marks omitted). However, "[t]o bring a claim within the continuing violation exception, a plaintiff must at the very least allege that

9

one act of discrimination in furtherance of the ongoing policy occurred within the limitations period." *Id.*

Scivetti filed her EEOC complaint on June 13, 2023, following a tolling agreement with Defendants entered on May 5, 2023. Compl. ¶ 220; ECF No. 51 at 5. As a result, Scivetti's action can cover conduct occurring within 300 days of May 5: that is, on or after July 7, 2022. However, the last specific date of any alleged illegal conduct is June 22, 2022. Compl. ¶ 209. And while Scivetti mentions that Koeneke's harassment was "ongoing" as of July 27, 2022, *id.* ¶ 210, she does not allege any specific actions within the limitations period to meet the plausibility requirements of Rule 12(b)(6). Thus, even if the Court were to conclude that the continuing violation doctrine is applicable here, Scivetti's claim fails as untimely. *See Garcia v. Yonkers Bd. of Educ.*, 188 F. Supp. 3d 353, 359 (S.D.N.Y. 2016). As a result, Count I is dismissed.

### III. Scivetti's retaliation claims fail because she fails to plead that Defendants had knowledge of her complaints

Scivetti's claims for unlawful retaliation also fail because she does not allege that Defendants knew of Scivetti's complaints to Walsdorf regarding Koeneke's harassment.[4] In order to establish a *prima facie* case of retaliation, a plaintiff must demonstrate that: (1) she was engaged in a protected activity under Title VII; (2) the defendant was aware of the plaintiff's participation in the protected activity; (3) the employer took an adverse action against the plaintiff based upon her activity; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer. *Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 608 (2d Cir. 2006). "[T]he allegations in the complaint need only give plausible support to the reduced

---

[4] While styled as a separate claim, it appears that the Count III alleges only further retaliation rather than a sex-based discriminatory failure to hire. The Court therefore addresses both counts together.

prima facie requirements" at the motion to dismiss stage. *Littlejohn v. City of New York*, 795 F.3d 297, 316 (2d Cir. 2015).

The complaint comes close to meeting these requirements but ultimately falls short. Scivetti's complaints to Walsdorf regarding sexual harassment clearly constitute a protected activity. *See, e.g.*, *Littlejohn*, 795 F.3d at 318-19 (explaining that the "opposition clause protects such complaints to management and protests against discrimination"); *Cruz*, 202 F.3d at 566 ("[T]he law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection, this notion of 'opposition' includes activities such as 'making complaints to management ... and expressing support of co-workers who have filed formal charges.'" (quoting *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990))). However, she never alleges that she told anyone other than Walsdorf about Koeneke's conduct. And while she alleges that Walsdorf made Slater aware of Koeneke's behavior generally, she does not she allege that Walsdorf told Slater, Berkeley, or anyone involved in her firing about *her complaints* specifically. Because knowledge of a Plaintiff's engagement in a protected activity is a requirement for a retaliation claim under Title VII, Counts II and III must be dismissed. *Compare Rice v. Smithtown Volkswagen*, 321 F. Supp. 3d 375, 390 (E.D.N.Y. 2018) (denying motion to dismiss where Plaintiff alleged that adverse employment action occurred directly because of Plaintiff's complaints at direction of a supervisor with knowledge of those complaints).

IV. **Scivetti's COBRA notice claim fails because she does not name the plan administrator**

Lastly, Scivetti's claims based on a failure to provide a required "Cobra Notice," Compl. ¶ 282, fail again on a pleading defect. As a member of this Court explained:

> The "purpose of COBRA is to allow employees who lose their jobs to continue their medical coverage at approximately the group rate, which is lower than the rate for individual coverage." *Vangas v. Montefiore Med. Ctr.*, No. 11 Civ. 6722 ER, 2014 WL 5786720, at *3 (S.D.N.Y. Nov. 5, 2014) (citing *Local 217, Hotel & Rest. Emps. Union v. MHM, Inc.*, 976 F.2d 805, 809 (2d Cir.1992)). The "notification

11

>   requirements of COBRA are clear: when a covered employee is terminated, an employer must notify the administrator of the group health care plan within thirty days ... the administrator then has fourteen days to notify the qualified beneficiary of her right to continue coverage[.]" *Id; see also Treanor v. Metro. Transp. Auth.*, 414 F.Supp.2d 297, 304 (S.D.N.Y.2005) (citing 29 U.S.C. § 1166(a)(2)). While statutory damages are available for failure to comply with COBRA's notice provisions, they are available only against the actual plan administrator-not against an employer who is not the plan administrator. 29 U.S.C. § 1132(c)(3); *see also Capobianco v. Sandow Media Corp.,* No. 11 Civ. 3162, 2012 WL 4561761, at *6–7 (S.D.N.Y. Sept. 29, 2012) (*citing Colodney v. Continuum Health Partners, Inc.,* No. 03 Civ. 7276(DLC), 2004 WL 829158, at *12 (S.D.N.Y. Apr. 15, 2004)). Thus to successfully plead a COBRA claim, a plaintiff must name the plan administrator as a defendant.

*Gill v. ACACIA Network*, 2015 WL 1254774, at *4 (S.D.N.Y. Mar. 18, 2015). Because liability hinges on status as the plan administrator, Courts have dismissed COBRA notice claims without prejudice where no specific plan administrator is alleged. *Id.* at 5. Nowhere in the complaint is any defendant identified as the plan administrator. Thus, Count IV is also dismissed without prejudice against all Defendants.

## CONCLUSION

The Court does not discount the seriousness of Scivetti's allegations in this case. However, to survive a motion to dismiss, a complaint must state a plausible claim for relief under the law. Because Counts I—IV as currently alleged do not do so, they must be dismissed.

However, Plaintiff may seek leave to amend the Complaint to cure the above identified errors, and may incorporate additional allegations based on, *inter alia*, the Walsdorf affidavit. Plaintiff is **ORDERED** to, within 30 days, submit a letter motion to the court of no more than five pages, seeking leave to amend and explaining how the proposed amendments ensure Counts I-IV state plausible claims for relief. Plaintiff will attach a proposed amended complaint and a redline comparing it to the original complaint. Defendants will have 14 days to respond in a **single** joint letter brief not exceeding 5 pages.

The Clerk of Court is respectfully requested to terminate ECF Nos. 25, 29, and 33.

SO ORDERED.

Dated: November 6, 2025

New York, New York

                                                        DALE E. HO
                                      United States District Judge